**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JERRY GRAHAM,                            )
                                          )
                Plaintiff,               )
                                          )
       vs.                               )          Case No. 2:22-cv-02227-DDC-ADM
                                          )
UNITED PARCEL SERVICE, INC.,             )
an Ohio corporation,                     )
                                          )
                Defendant.               )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**

In support of its Motion for Summary Judgment, UPS offers the following Memorandum:

**I.      INTRODUCTION**

Ten-minute paid breaks are not required by any Kansas or federal law. At UPS, however, some employees may have a contractual right to ten-minute paid breaks under the terms of a collective bargaining agreement ("CBA"). In this case, Plaintiff alleges that he did not receive his contractual right to ten-minute paid breaks, while other bargaining unit employees did. Stated differently, he alleges that UPS breached the CBA.

Ordinarily, claims for violations of a CBA must be raised through the CBA's grievance-arbitration procedure, which is governed exclusively by the National Labor Relations Act ("NLRA") and overseen by the National Labor Relations Board ("NLRB"), a specialty federal agency. Plaintiff knows this because he did, in fact, file a grievance under the CBA, which the union denied. He then filed an Unfair Labor Practice ("ULP") charge with the NLRB, which the NLRB denied.

At last, he filed this lawsuit, in which he again alleges that UPS failed to provide him a benefit created only by contract. To avoid obvious preemption issues, he artfully styled it under

the Age Discrimination and Employment Act ("ADEA") by claiming that younger bargaining unit members received their paid break. Although parading as an ADEA claim, this case remains a straightforward breach of contract action.

Even if not preempted by the NLRA or *Garmon*, which it is, the claim still fails on the merits. As bargained for and memorialized in the CBA, longer feeder driving routes did not receive paid breaks because such routes already pay mileage plus hourly rates, while shorter feeder driving routes pay only hourly rates. As a driver with significant seniority, Plaintiff basically chose the route he wanted. His choice of route, not his age, determined whether he was entitled to paid ten-minute breaks under the applicable CBA.

## II.   UNDISPUTED MATERIAL FACTS

The following facts are stipulated facts from the Pretrial Order (Doc. 38 at § 2.a.):

1.      Plaintiff worked at UPS for 43 years.

2.      During Plaintiff's employment with UPS, he was a member of a labor union that negotiated the terms and conditions of his employment with UPS, which were contained in a collective bargaining agreement ("CBA").

3.      At all times relevant to his claims, Plaintiff was a feeder driver for UPS.

4.      As a feeder driver for UPS, Plaintiff bid on the route he wanted.

5.      The bidding process for feeder drivers was included in the CBA.

6.      The feeder-driver bidding process was seniority based (drivers with more seniority bid before drivers with less).

7.      For the final three years of Plaintiff's employment ("relevant time period"), he bid on a longer route (500 plus miles roundtrip).

8.      During the relevant time, Plaintiff could have bid on a shorter, hourly route if he wanted.

9.      Plaintiff's compensation during the relevant time was governed by the CBA.

10.     Under the CBA, feeder drivers who bid on shorter routes (fewer than 500 miles roundtrip) during the relevant period were compensated hourly and were paid their hourly rate for a ten-minute break.

11.     Under the CBA, feeder drivers on longer routes (500 or more miles roundtrip) were compensated primarily for mileage plus hourly compensation for specific tasks; they were not paid separately for a ten-minute break.

12.     No feeder driver who successfully bid on a longer route was compensated separately for a ten-minute break.

13.     A feeder driver senior to Plaintiff who successfully bid on a shorter route was compensated hourly, including for a ten-minute break.

14.     Plaintiff grieved that he was not paid for a ten-minute break while working as a feeder driver on the longer route.

15.     The union withdrew Plaintiff's grievance that he was not paid for a ten-minute break while working as a feeder driver on the longer route.

16.     Plaintiff is not aware of any feeder drivers compensated primarily based on mileage (as opposed to hourly drivers) who were paid for a ten-minute break.

17.     Plaintiff challenged the union's withdrawal of his grievance by filing a ULP against the union for breach of its duty of fair representation, NLRA Section 8(b)(1)(A).

18.     Plaintiff's challenge to the NLRB was unsuccessful.

19.     The mileage rate was negotiated by the union.

20.     The ten-minute paid break was negotiated by the union.

21.     Plaintiff voluntarily retired from UPS in April of 2020.

22.     Plaintiff filed his Charge of Discrimination on October 21, 2020; 300 days before that is December 26, 2019.

23.     Plaintiff was 67 years old when he filed his lawsuit.

In addition, the following additional fact is undisputed:

24.     Throughout the relevant time, Plaintiff was retirement-eligible.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant is entitled to judgment as a matter of law and there is no genuine dispute of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact exists when 'the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" *Zwygart v. Bd. of Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1090 (10th Cir. 2007). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

### IV.   ARGUMENT

#### A.   Plaintiff's ADEA Claim Amounts to a Claim for Breach of the CBA, Which is Governed by Section 301 and Should be Dismissed

Plaintiff's ADEA claim is premised entirely on the alleged discriminatory application of ten-minute paid breaks. Since neither federal nor state law mandate paid ten-minute breaks, the existence of ten-minute paid breaks at UPS is created and conferred solely by private employment contract, *i.e.* the applicable CBA. As discussed below, Plaintiff's claim for breach of the CBA is thus governed by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 185(a), and should be dismissed.

At all times while employed by UPS, Plaintiff was part of a bargaining unit represented for collective bargaining purposes by the International Brotherhood of Teamsters, Local No. 41 (the "Union"). (SOF ¶ 2). The Union represents over 350,000 UPS employees in all 50 states, including Plaintiff, and has been certified as the *exclusive bargaining representative* by the NLRB per NLRA, Section 9(a). *See* 29 U.S.C. § 159(a). Unlike labor unions with only Sections 7 or 8(f) status, so long

as a union is conferred Section 9(a) status, both the employer and union must deal exclusively with each other, bargain for and memorialize a CBA, and jointly interpret and apply it. This process is governed exclusively by the NLRA and overseen by the NLRB, a specialty federal agency.[1]

Although the entire bargaining unit is covered and bound by the CBA negotiated on their behalf, individual employees are not signatories to it—only the union and company are. For that reason, and others, individual employees like Plaintiff have standing to sue to enforce the CBA in *only* two limited circumstances: (1) to seek judicial review of the outcome of grievance-arbitration, provided that he exhausted any grievance-arbitration remedies provided in the CBA, or (2) as a hybrid Section 301 claim, *see Vaca v. Sipes*, 386 U.S. 171 (1967), against both the union and company when the union acted in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983). Breach of a CBA pled in any other way by an individual employee is

---

[1] *See, e.g.*, *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 104 (1961) ("The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling."); *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959) ("When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."); *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455, 457 (1957) ("[Section 301] does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way. ... Federal interpretation of the federal law will govern, not state law. ... Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights."); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580-81 (1960) ("A collective bargaining agreement is an effort to erect a system of industrial self-government . . . the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government.").

preempted by Section 301 and/or must be pursued by filing a ULP with the NLRB, the agency vested with exclusive jurisdiction over collective bargaining.[2]

Plaintiff fails to properly allege a claim for breach of a CBA and inexplicably brought an ADEA claim instead. However, even if Plaintiff had properly styled his claim, summary judgment would still be appropriate.

***First***, even if Plaintiff submitted the outcome of the "final and binding" grievance-arbitration process under the CBA to this Court for judicial review, that outcome should be affirmed since it clearly "draws essence" from the CBA, the standard of review. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate."). Specifically, the Union here bargained for a robust grievance-arbitration process on Plaintiff's behalf, which is specifically used to resolve grievances, meaning "*any* controversy, complaint, misunderstanding, or dispute arising as to interpretation, application or observance of any of the provisions of [the CBA]."[3] The multi-step process in the applicable CBA begins with local meetings between UPS and the Union, and then escalates to various joint UPS-Union Panels that contain equal numbers of UPS and Union members, and finally to "binding arbitration" at the American Arbitration Association. At each stage, parties may present witnesses, evidence, and briefs citing to an extensive body of prior panel and arbitration opinions interpreting the CBA, and "a decision reached at any stage ***shall be final and binding*** on both parties."

---

[2] *Supra* n.1.

[3] The grievance-arbitration procedures are set forth in Art. 7 and 8 of the National Master Agreement and Art. 5 of the Teamsters Central Region Supplemental Agreement.

Plaintiff believed that UPS or the Union were breaching the CBA as to ten-minute paid breaks and properly filed a grievance to contest it. (SOF ¶ 14). The Union considered the grievance as Plaintiff's exclusive statutory representative and denied it (SOF ¶ 15), meaning that it found it to be without merit and not in violation of the CBA. This outcome is "final and binding" on the parties. *See American Freight System, Inc. v. NLRB*, 722 F.2d 828 (D.C. Cir. 1983) (final outcome of grievance-arbitration process reached at a grievance committee should hold equal weight as one reached at arbitration). As noted in *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987):

> The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate. *Id.*, at 597.

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

> "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567-568 (1960) (emphasis added; footnote omitted).

To the extent that this Court interprets Plaintiff's claim as seeking judicial review of the "final and binding" outcome from grievance-arbitration, that outcome should be affirmed since

it clearly drew essence from the CBA. As noted, although the CBA has a provision providing paid ten-minute breaks to certain employees, the application of that term depends on whether a feeder driver route is over or under 500 miles roundtrip. (SOF ¶¶ 10-11). Long routes are paid on a mileage plus hourly basis, meaning that drivers are compensated for non-driving time via an hourly rate *in addition to* their driving time, which is paid on a mileage basis. (SOF ¶ 11). For that reason, *all* work time is already compensated, including time when the driver is not working due to personal breaks. In contrast, short routes are paid on an hourly rate basis only, meaning drivers are paid only when working on the clock. (*Id.*) Therefore, feeder drivers of shorter routes must actually clock-in and track their ten-minute breaks, so that they may be paid for them. Here, Plaintiff had decades of seniority and could choose a long or short route. (SOF ¶¶ 6-8). He chose a long route, though he could have selected a short one, and therefore was already compensated for his ten-minute breaks via the mileage plus hourly model for long routes. (*Id.*) When he sought *additional compensation* on top of his mileage and hourly pay via the grievance-arbitration process, it was properly denied. He does not meet the high standard to overturn that outcome via judicial review.

Second, Plaintiff could sue on an individual basis to enforce an alleged breach of a CBA under a limited exception to the complete preemption rule in Section 301: a so-called hybrid 301 claim, a judicially-created cause of action by *Vaca v. Sipes*, 386 U.S. 171 (1967). There, the U.S. Supreme Court carved a narrow exception to Section 301, which otherwise confers standing only on unions and companies to enforce CBAs in court. In essence, although the grievance-arbitration process is jointly administered by the company and union under the auspices of the NLRB, the process can nonetheless breakdown entirely if the union acts arbitrarily, discriminatorily, or in

bad faith, *i.e.* it breaches its statutory duty of fair representation imposed by the NLRA. *Id.* at 190. Only in such cases, an employee may proceed directly to court to enforce a breach of the CBA. A hybrid 301 claim, however, must be brought within six months against *both* the union and company, and the employee must establish *both* that the union violated its duty of fair representation *and* that the company breached the CBA. *See DelCostello*, 462 U.S. at 172.

Even if this Court accepts this theory of review, it too must fail. Any hybrid 301 claim is untimely and procedurally improper since Plaintiff failed to join the Union as a defendant. Even had he done so, the claim should be dismissed on the merits. As discussed, no violation of the CBA occurred when Plaintiff was compensated with both mileage and hourly pay, which was a function of his bid-for route and nothing else. In fact, he cannot identify any feeder driver compensated primarily based on mileage (as opposed to hourly drivers) who were paid for a ten-minute break. (SOF ¶ 16). He also fails to allege or show any arbitrary, discriminatory, or bad faith conduct by the Union. To the contrary, he filed a ULP specifically alleging that the Union breached its duty of fair representation. (SOF ¶ 17). The NLRB, the agency vested with exclusive authority to interpret the NLRA, did not pursue the ULP, indicating that it found it to be without merit. (SOF ¶ 18).

### B. Plaintiff's Claim is Otherwise Preempted by Section 301

As a separate basis for judgment, Plaintiff's ADEA claim is preempted by Section 301 because its resolution depends on interpretation of the applicable CBA. The U.S. Supreme Court has held that the body of federal law authorized under Section 301 *completely preempts* claims that are either based on, or require interpretation of, a collective bargaining agreement. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (footnote omitted);

accord *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 558 (1968) (when

"the heart of the complaint was a … clause in the collective bargaining agreement," the complaint

asserts a Section 301 claim). "[Q]uestions relating to what the parties to a labor agreement

agreed, and what legal consequences were intended to flow from breaches of that agreement,

must be resolved by reference to uniform federal law, whether such questions arise in the

context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.*

*v. Lueck*, 471 U.S. 202, 210 (1985). The test for whether a claim is preempted by Section 301 is

"whether evaluation of the tort claim is *inextricably intertwined* with consideration of the terms

of the labor contract." *Id*. at 213. Thus, if the resolution of a claim depends on the meaning of

the terms of the CBA, the application of law is preempted. *Lingle v. Norge Div. of Magic Chef, Inc.*,

486 U.S. 399, 405-06 (1988).

Although this body of law generally applies to state law claims, it can also preempt federal

claims where – despite how the claim is labeled – the gravamen of the claim is one that requires

interpretation of the CBA and arises under Section 301. *See Martin v. Lake Cnty. Sewer Co.*, 269

F.3d 673, 679 (6th Cir. 2001) (Section 301 preempts "purported" fair labor standards act claim

that is premised solely on alleged breaches of the CBA); *Vadino v. A. Valey Engineers*, 903 F.2d

253, 266 (3d Cir. 1990) (same, noting fair labor standards act contains no language suggesting it

is the appropriate vehicle for interpretation of a disputed provision of a CBA).[4]

Here, although Plaintiff labels his claim as age discrimination in violation of the ADEA, the

real claim is one of contract: that UPS did not pay him for ten-minute breaks as purportedly

required by the CBA. The true nature of the claim is underscored by his using the CBA process to

---

[4] The same logic applies to *Garmon* preemption, below.

file a grievance alleging that he was not being paid for his breaks, but not alleging that younger

drivers were.[5] Adjudicating Plaintiff's claims will require interpretation of Article 8 of the CBA

(requiring that all grievances or questions of interpretation regarding the CBA must go through a

multi-step grievance arbitration process), and Article 18(a) of the CBA (providing drivers with paid

breaks) to determine whether the Union-negotiated method for how these provisions were

implemented was proper in accordance with the CBA, or whether the Union improperly withdrew

the grievance. This is the very type of intrusion into collective bargaining relationships that

Section 301 is designed to prevent.

**C.     The *Garmon* Doctrine Preempts Plaintiff's Ten-Minute Break Pay Claim Because Plaintiff's Claim is Arguably Subject to the NLRA and the NLRB Already Considered and Rejected Plaintiff's Claim**

To effectuate its goal of unifying labor law and policy nationwide, the NLRA created both

substantive law to regulate labor-management relations and a specialty federal agency, the

NLRB, to ensure its consistent, uniform application. Unlike other agencies like the DOL or EEOC,

the NLRB is a self-contained prosecution unit, administrative court, and appellate system with no

private right of action and no access to civil courts until exhaustion of the agency process through

appeal to the Board itself.[6]

The Supreme Court first acknowledged the NLRB's primary, exclusive jurisdiction over

---

[5] Plaintiff failed to file a grievance at all regarding being denied training opportunities in violation of the CBA. This failure prohibits him from filing a lawsuit on this claim. *See Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1537 (10th Cir. 1995) ("where the collective bargaining agreement provides for an administrative grievance procedure, the employee must exhaust that procedure before bringing a private judicial action").

[6] *See generally* 29 U.S.C. § 151, *et seq.* Even then, appeal is to the U.S. Courts of Appeal and not U.S. District Courts. Section 3(d) vests the NLRB, acting through its General Counsel, with "final authority . . . in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board[.]" 29 U.S.C. § 153(d).

conduct protected or prohibited by the NLRA in *Garner v. Teamsters, Chauffeurs & Helpers Local Union*, 346 U.S. 485 (1953):

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts . . . .

> A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. The same reasoning which prohibits federal courts from intervening in such cases, except by way of review or on application of the federal Board, precludes state courts from doing so. *Garner*, 346 U.S. at 490-91.

Six years later, the Supreme Court went *even further*, further emphasizing the broad preemption of labor-management relations intended by Congress. Specifically, in *San Diego Building Trades Council v. Garmon* ("*Garmon*"), the Supreme Court expanded *Garner* to cover conduct that is *even arguably* protected or prohibited by the NLRA:

> When an activity is **arguably** subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted. *Garmon*, 359 U.S. at 245 (emphasis added).

The Supreme Court again recognized the uniqueness of the NLRA, which established a legal framework and also created a dedicated specialty agency. It repeated its above language from *Garner* and added:

> When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting. . . .

> At times it has not been clear whether the particular activity regulated by the

States was governed by § 7 or § 8 or was, perhaps, outside both these sections. **But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board.** What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board. *Garmon*, 236 U.S. at 244-45 (emphasis added).

In practical terms, the NLRA as both written by Congress and interpreted by the Supreme Court means that no parties can file ULP claims in courts of law. Moreover, the NLRB has primary and exclusive jurisdiction over any claim that even *arguably* constitutes a ULP, and courts should defer to its primary jurisdiction. Any other outcome would leave other tribunals to "regulate conduct so plainly within the central aim of federal regulation," which "involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law" and "would create potential frustration of national purposes." *Garmon,* 359 U.S. at 244. The danger of interference is most present here, where the complained-of conduct *both* constitutes an obvious ULP *and* where the NLRB has already asserted jurisdiction and resolved the claim.

Plaintiff's claim is preempted because it seeks to require UPS to engage in "direct dealing," a ULP under Section 8(a)(5) where an employer bypasses the statutory bargaining agent and negotiates individual employment terms with covered employees outside of the applicable CBA. The Union is Plaintiff's statutory bargaining agent under Section 9(a),[7] which imposes a duty

---

[7] A labor union may represent a bargaining unit under either NLRA Section 8(f) or 9(a). Certification under 9(a)—which confers statutory exclusivity upon the bargaining agent—can only be granted by the NLRB and not through mutual agreement, court order, or even an act of Congress. *See generally* 29 U.S.C. § 159(a). The NLRB will confer Section 9(a) status only where the labor union has proven "majority status" through an election by the workers. *NLRB v. Oklahoma Installation Co.*, 219 F.3d 1160 (10th Cir. 2000). An employer's duties under the NLRA, such as the duty to bargain and refrain from direct dealing under Section 8(a)(5), are more rigorous and more regulated when the bargaining agent has Section 9(a) rather than Section 8(f) status.

on UPS to bargain with the Union over "mandatory subjects of bargaining"[8] such as wages. As a corollary to the duty to bargain, employers cannot bypass the Union's role as the exclusive bargaining representative and negotiate or agree to different terms with some or all of the bargaining unit employees.[9]

When Plaintiff claims that he should have been paid separately for a ten-minute break, he is claiming that he should be paid differently from all other members of his bargaining unit who, like him, successfully bid on a longer route that is paid primarily by mileage. He therefore claims that UPS should have dealt directly with him, without negotiating with the Union, and entered into a side agreement distinct from the terms of the CBA. This is a form of unlawful direct dealing. *See Ryan Iron Works, Inc. v. NLRB*, 257 F.3d 1 (1st Cir. 2001); *McDaniel Ford, Inc.*, 322 N.L.R.B. 956 (1997). Significantly, the fact that Plaintiff already filed a ULP with the NLRB on this issue "bolsters the conclusion that [his] claims are preempted by Section 8" and thus subject to *Garmon* preemption. *Ackers v. Celestica Corp.*, No. C2-06-496, 2007 WL 894470, *6 (2007) *aff'd* 274 Fed. Appx. 450 (2008); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1517-18 (11th Cir. 1988)

---

[8] Section 8(d) sets forth the statutory meaning of mandatory subjects of bargaining as "wages, hours and other terms and conditions of employment"; however, this term has largely been developed through Board case law. *Local Union No. 189 v. Jewel Tea Co.*, 381 U.S. 676, 685 (1965).

[9] *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678 (1944) ("[I]t is a violation of the essential principle of collective bargaining … for the employer to disregard the bargaining representative by negotiating with individual employees, whether a majority or minority, with respect to wages, hours and working conditions …"); *Facet Enters. v. NLRB*, 907 F.2d 963, 969 (10th Cir. 1990) ("Once a bargaining unit selects its bargaining representative through a Board-certified election, the employer must bargain in good faith with that representative alone. An attempt by the employer to bypass the bargaining representative in conducting negotiations constitutes direct dealing, a violation of § 8(a)(5) of the Act." (internal citation omitted): *General Electric Co.*, 150 N.L.R.B. 192 (1964), *enforced*, 418 F.2d 736 (2d Cir. 1969), *cert. denied*, 397 U.S. 965 (1970) (direct dealing occurs when an employer attempts "to deal with the Union through the employees, rather than with the employees through the Union.").

(affirming dismissal under *Garmon* because the substance of plaintiffs' claims was identical to their ULP).

No matter how Plaintiff frames his claim, it is undisputed that the essence is that UPS failed to "bargain in good faith" on the terms and conditions of his employment by failing to change his rate of pay without consulting the Union. This claim not only "arguably" implicates a bargaining violation, but Plaintiff stipulates the NLRB has already properly exercised its exclusive jurisdiction to hear and reject the claim.[10] Plaintiff's claim should therefore be dismissed in accordance with the *Garmon* doctrine.

### D.    There is No Triable Issue As to Plaintiff's ADEA Claim Related to Unpaid Breaks, and Plaintiff's Sole Claim Fails as a Matter of Law

Finally, although Plaintiff's sole remaining claim under the ADEA is improper and should not be considered on the merits for the numerous reasons considered above, even on the merits, summary judgment is appropriate. The undisputed facts demonstrate there is no triable issue on Plaintiff's age discrimination claim.[11]

The essential elements of Plaintiff's ADEA claim are "1) []he is a member of the class protected by the [ADEA]; 2) []he suffered an adverse employment action; 3) []he was qualified

---

[10] This District recently held that the *Garmon* doctrine preempted Plaintiffs' claims where the NLRB exercised jurisdiction over the claim, even though in that matter (unlike here) the NLRB deferred its determination rather than outright rejecting the claim: "[t]he fact that the NLRB accepted jurisdiction of the [] ULP . . . indicate[s] that this matter presented an arguable claim for relief under the NLRA for violation of Defendant's duty to bargain collectively and in good faith under 29 U.S.C. § 158(d)." *Ballou v. United Parcel Serv., Inc.*, No 20-2640-JWB, 2023 WL 130542, *7 (D. Kan. Jan. 9, 2023), *appeal docketed*, No. 23-3021 (10th Cir. Feb. 8, 2023).

[11] The familiar *McDonnell Douglas* burden shifting framework applies to ADEA claims. *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). "[T]he plaintiff must first demonstrate a *prima facie* case of unlawful discrimination. If []he succeeds at this first stage, the burden of production then shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual." *Id.*

for the position at issue; and 4) []he was treated less favorably than others not in the protected class." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998). Here, there is no triable issue as to element (4). In short, the following is true for all UPS feeder drivers during the relevant period:

- There were two types of routes, longer routes (500 plus miles roundtrip) and shorter routes (less than 500 miles roundtrip). (SOF ¶¶ 10-11).

- UPS feeder drivers bid on the routes they wanted. (*See* SOF ¶ 4).

- The bidding process for UPS feeder drivers was based on seniority, with those with more seniority bidding first. (SOF ¶ 6).

- UPS feeder drivers who successfully bid on longer routes were primarily compensated for mileage, but also received hourly compensation for specific tasks. (SOF ¶ 11).

- UPS feeder drivers who successfully bid on longer routes were not separately compensated for a ten-minute break. (SOF ¶ 11).

- UPS feeder drivers who successfully bid on shorter routes were compensated hourly, including for a ten-minute break. (SOF ¶ 10).

- Based on his seniority, Plaintiff could successfully bid into a longer route or a shorter route. (SOF ¶¶ 4, 8).

- Plaintiff chose to bid into the longer route. (SOF ¶¶ 4, 7).

In other words, whether a UPS feeder driver was paid for a ten-minute break depended entirely and solely on the route into which the driver bid. (SOF ¶¶ 10-11). No driver who successfully bid into the longer route – regardless of the driver's age – received pay for a ten-minute break. (SOF ¶ 11). And, every driver who successfully bid into the shorter route – regardless of the driver's age – received pay for a ten minute break. (SOF ¶ 10).

The fact that the UPS feeder drivers with more seniority generally preferred the longer routes does not change that fact. In *Hazen Paper v. Biggins,* the Supreme Court said "[b]ecause

age and years of service are analytically distinct, it is . . . incorrect to say that a decision based on years of service is necessarily 'age-based."' 113 S. Ct. 1701, 1707 (1993). In *Hazen Paper*, seniority was a negative (the plaintiff claimed it resulted in his termination). At UPS, seniority is a positive, as more senior feeder drivers get to bid on routes before less senior employees. Where seniority is a positive, there necessarily is no age discrimination.

Plaintiff cannot point to a single individual who was treated more favorably than he was. In fact, he is not aware of any comparator drivers – that is, feeder drivers like Plaintiff who were compensated primarily based on mileage (as opposed to hourly drivers) – who were paid for a ten-minute break. (SOF ¶ 16). He points to no policy that was violated by the actions he alleges, nor does he implicate any individual actor. He merely asserts his (erroneous) belief that he was entitled to additional compensation that no other similarly-situated driver received.

Further, paying Plaintiff in accordance with the Union-negotiated CBA, the contract he stipulates governs his employment, is undisputedly a legitimate, nondiscriminatory basis for the action challenged. It has to be. It applies to all feeder drivers, regardless of their ages.

And, Plaintiff has no evidence of pretext. The only evidence to which Plaintiff may point in support of a claim of pretext is his claim that he was asked about his retirement plans. As a matter of law, such an ask is not evidence of age animus, especially where – as here – the plaintiff is retirement-eligible. Indeed, in *Maughan v. Alaska Airlines, Inc.*, 281 F. App'x 803 (10th Cir. 2008), the Tenth Circuit held that "an employer may make reasonable inquiries into the retirement plans of its employees." *Id*. at 807 (quoting *Cox v. Dubuque Bank & Trust Co.,* 163 F.3d 492, 497 (8th Cir. 1998) (citing cases holding as such from the Fifth, Sixth and Seventh Circuits). *See also Wagoner v. Pfizer, Inc.*, 391 Fed. Appx. 701, 708 (10th Cir. 2010) (supervisor's inquiry

into plaintiff's retirement plans did not raise inference of age discrimination and was "isolated incident" that cannot support discrimination claim); *Miller v. Jefferson Cnty. Bd. of Cnty. Commissioners*, No. 16-CV-2445-JWL, 2018 WL 1116673, at *9 (D. Kan. Mar. 1, 2018) (inquiry into retirement plans of fifteen subordinates not evidence of discriminatory animus where there was no evidence of other comments made, or employees forced to retire).

## V.    CONCLUSION

For the reasons stated above, Plaintiff's age discrimination claims are preempted by the LMRA and *Garmon*. Even if they were not, they each fail as a matter of law. UPS respectfully requests the Court grant this Motion and enter judgment for UPS.

Respectfully submitted,

/s/ *Jeffrey D. Hanslick*
Jeffrey D. Hanslick, KS #22612
Direct: 816.627.4408
E-Fax: 816.817.2517
jhanslick@littler.com
Bonnie G. Birdsell, D. Kan. #78895
Direct: 816.627.4412
E-Fax: 816.817.1957
bbirdsell@littler.com
Bayli Martin, KS #28301
Direct: 816.627.4414
E-Fax: 816.817.1831
bamartin@littler.com
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2023, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Albert F. Kuhl
LAW OFFICES OF ALBERT F. KUHL
9393 West 110th Street, Building 51
Suite 500
Overland Park, KS 66210
Al@KCjoblawyer.com

**ATTORNEY FOR PLAINTIFF**

*/s/ Jeffrey D. Hanslick*
**ATTORNEY FOR DEFENDANT**