**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JERRY GRAHAM,**

                    **Plaintiff,**

**vs.**                                    **Civil No. 2:22-cv-02227-DDC-ADM**

**UNITED PARCEL SERVICE, INC.,**
**An Ohio corporation**

                    **Defendant.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jerry Graham ("Plaintiff") submits his Memorandum in Opposition to Defendant United Parcel Service, Inc., an Ohio corporation ("UPS") Motion for Summary Judgment. Because genuine issues of material fact exist in this action, defendant's Motion should be denied.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S UNDISPUTED MATERIAL FACTS**

For purposes of brevity, only those factual assertions raised by defendant which plaintiff controverts, and/or raises objection to, are referenced below.

1

6. Controverted in part. The feeder-driver bidding process was seniority based, meaning the more senior drivers could bid on mileage runs. (Bradbury Depo, Ex. B, p. 34, ll. 12-17)

11. Controverted in part. With the mileage agreement, mileage-rate drivers are compensated for additional start time work at a higher rate. (Bradbury Depo, Ex. B, p. 29, ll. 6-23) Hourly-rate feeder drivers were paid their hourly rate for the 10-minute break (Bradbury Depo, Ex. B, pg. 37, ll. 15-18)

12. Controverted. Hourly-rate drivers were paid their hourly rate for the 10-minute break (Bradbury Depo, Ex. B, pg. 37, ll. 15-18)

13. Controverted in part. Hourly-rate feeder drivers within my department were younger and less experienced than mileage-rate feeder drivers. (Graham Declaration, Ex. C, par. 2)

16. Controverted. Mileage-rate drivers can account for down time on mileage pay which is on top of their mileage pay for that day at an agreed upon rate. (Bradbury Depo, Ex. B, p. 23, ll. 3-7; p. 29, ll. 12-1)

18. Controverted. The NLRB chose not to process plaintiff's grievance. (Graham Depo, Ex. A, p. 51, ll. 18-21)

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

1. Mileage-rate drivers are compensated based on an agreed upon mileage rate for the miles driven. If, for example, they sustain a flat tire during their run, they are additionally compensated for that time they are delayed. (Bradbury Depo, Ex. B, p. 21, l. 19 - p. 22, l. 13)

2.  Mileage-rate drivers can account for down time which is on top of their mileage pay for that day at an agreed upon rate. (Bradbury Depo, Ex. B, p. 23, ll. 3-7; p. 29, ll. 12-18)

3.  Delay time is compensated on an hourly basis for the driver affected. (Bradbury Depo., Ex.B, p.27, ll.8-23)

4.  Mileage-rate drivers are also separately compensated for additional start time work, and/or meet point delays at a separate rate from their mileage pay tied to the time involved in each such instance. (Bradbury Depo, Ex. B, p. 29, l. 6 – p. 30, l.1)

5.  Mileage-rate drivers are also compensated for extra work they may do at the end of their shift, again at the delay rate for their extra work. (Bradbury Depo, Ex. B, p. 30, ll. 6-18)

6.  Mileage-rate drivers are also paid extra hourly compensation based on the extra time invested to do the thing that is happening. (Bradbury Depo, Ex. B, p. 32, ll. 2-6)

7.  Hourly-rate drivers are paid their hourly rate for the 10-minute break they take. (Bradbury Depo, Ex. B, pg. 37, ll. 5-18)

8.  Defendant UPS pays its hourly-rate feeder drivers for their 10-minute break as per the contract. (Bradbury Depo, Ex. B, p. 37, ll. 22-24)

9.  Mr. Graham filed a grievance over the non-payment to him by the defendant of a 10-minute break, but Local 41 withdrew Plaintiff Graham's grievance (Bradbury Depo, Ex. B, p. 48, ll. 4-23)

10. Mileage runs are picked/bid by high seniority drivers who are more senior within the company. (Bradbury Depo, Ex. B, p. 34, ll. 12-17)

11. Hourly-rate drivers understand they are to take a paid 10-minute break (Bradbury Depo, Ex. B, p. 54, ll. 17-19)

12. Plaintiff Graham was asked several times by his supervisor Steve Wetschensky when he was going to retire. (Graham Depo, Ex. A, p. 31, l.21 – p. 32, l.1)

13. Plaintiff Graham was also asked by management member Hadley Bradbury as to when he was going to retire. (Graham Depo, Ex. A, p. 36, ll. 2-15)

14. All employees are to receive one ten-minute paid break. (Graham Depo, Ex. A, p. 41, ll. 10-11)

15. Mr. Thompson of Local 41 could not explain to Mr. Graham how the break could be figured into the mileage rate and the Union's basis for its decision to withdraw Mr. Graham's grievance. (Graham Depo, Ex. A, p. 50, ll. 9-15)

16. Mr. Graham raised the break payment issue with the NLRB, and they decided not to process the issue. (Graham Depo, Ex. A, p. 51, ll. 13-21)

17. The mandatory 10-minute paid break is part of the CBA. (Graham Depo, Ex. A, p. 53, ll. 16-19)

18. Bradbury and Wetschensky admitted to not knowing why the 10-minute break was not paid. (Graham Depo, Ex. A, p. 60, ll. 2-15)

19. Hourly-rate feeder drivers within plaintiff's department were younger and less experienced than mileage-rate feeder drivers. Plaintiff was a mileage-rate feeder driver at all times relevant to this matter. (Graham Declaration, Ex. C, par. 2)

20. Plaintiff was denied 10-minute paid breaks while similarly situated, younger, and less experienced feeder drivers received compensation for their 10-minute breaks. (Graham Declaration, Ex. C, par. 3)

21. Eric Miller, Craig Main, Jamie Masters, Scott Brown and Sean O'Brien are substantially younger than plaintiff, and are similarly situated less experienced feeder drivers who were paid for their 10-minute breaks. (Graham Declaration, Ex. C, par. 4)

22. Plaintiff is not aware of a younger, less experienced feeder driver who was not compensated for their 10-minute break. (Graham Declaration, Ex. C, par. 5)

23. Plaintiff was compensated with hourly pay and mileage pay for his assigned daily run. (Graham Declaration, Ex. C, par. 6)

24. Chris Hoffines, Larry Davidson, Richard Kiblinger and Steve Lombardo were in plaintiff's age range, and were more experienced mileage-rate drivers who were compensated with hourly pay and mileage pay for their assigned daily runs but not for their 10-minute breaks. (Graham Declaration, Ex. C, par. 7)

25. Plaintiff was denied additional start time work pay while similarly situated, younger, and less experienced feeder drivers received compensation for their start time work. (Graham Declaration, Ex. C, par. 8)

26. Plaintiff was questioned by Defendant UPS on a number of instances about his expected retirement date. (Graham Declaration, Ex. C, par. 9)

27. Hadley Bradbury and Scott Wetschensky were UPS management members who questioned plaintiff about the timeline for his retirement. (Graham Declaration, Ex. C, par. 10)

28. Plaintiff Graham did not intend, at any time, to waive the right to be paid in a manner free from age-related discrimination or bias. Nor did he give his union the right to waive his ability to be free from age bias in connection with the terms and conditions of his employment, including compensation practices. (Graham Declaration, Ex. C, par. 11)

## ARGUMENT

### 1. Summary Judgement Standard.

Summary judgment is appropriate only when the undisputed evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only when a party fails to establish a genuine issue of fact for trial about an element essential to the case for which that party bears the burden of proof, should summary judgment be entered against it. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the movant meets its burden the nonmovant may respond by presenting competent evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact as to the dispositive matters for trial. *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998). Summary Judgment is only warranted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

### A. Defendant's CBA Argument is Meritless

Plaintiff, age 68, is a member of a protected class under the ADEA. His protected class status was most certainly known to defendant as he had been employed with UPS for more than 20 years at the time his claims arose as set forth in his Complaint. Pursuant to the terms of

ADEA, "…[i]t shall be unlawful for an employer-- to… discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age (Emphasis added.) 29 U.S.C. Sec. 623(a), *Ellis v. United Airlines, Inc.,* 73 F.3d 999 (10th Cir. 1996). In this instance, defendant has violated plaintiff Graham's rights under ADEA by treating him differently than younger, similarly situated fellow feeder drivers.

Defendant misleads the court with this aspect of its summary judgment argument relating to the collective bargaining agreement (the "CBA") in effect between Mr. Graham's union (Teamsters Local no. 41) and the defendant. Plaintiff is not arguing that he was the victim of a breach of contract under the CBA. Plaintiff was discriminated against by defendant due to his age. In this respect, defendant paid younger and similarly situated feeder drivers for a 10-minute break on each daily driving shift. (Bradbury Depo, Ex. B, pg. 37, ll. 15-18; Graham Declaration, Ex. C, par. 3) Defendant distorts these facts by labeling plaintiff as a senior driver who was able to choose the right to perform work as a 'mileage-pay' based feeder driver. (Bradbury Depo, Ex. B, p. 34, ll. 12-17) While plaintiff did choose the mileage-pay based driving assignment option, his choice does not negate the discriminatory nature of the pay disparity at issue. Simply put, there is no reason that plaintiff because of his age and "senior" status should be completely omitted from receiving the 10-minute paid break provided to younger members of his feeder-driving contingent.

Plaintiff was repeatedly asked by his supervisor about his age being an issue and when he was going to retire. (Graham, Ex. A, p. 41, 10-11) Hadley Bradbury and Scott Wetschensky were UPS management members who continuously questioned plaintiff Graham's timeline for retirement. (Graham Declaration, Exh. C, par. 10) This type of factual behavior by defendant constitutes unmistakable evidence of an age-based bias in violation of the ADEA. Although all

7

of defendant's feeder-driving employees adhere to the CBA as their underlying employment contract, this fact does not negate plaintiff's right to unbiased, non-discriminatory treatment in the context of his compensation. Defendant's CBA argument is without merit and must be rejected on this basis.

### B. Plaintiff's Claim is Not Otherwise Preempted by Section 301

Preemption under Section 301 is limited to those cases in which an interpretation of the CBA is essential to deciding the matter at issue. As noted by the Tenth Circuit in a similar situation: "[This] action does not require interpretation of the CBA and is therefore not preempted...." *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419 (10th Cir. 1993). Interpretation is not the case in this instance. Here, the relevant activity is plain and straightforward. Plaintiff contends he was denied a paid daily break period that was provided to his younger feeder-driver colleagues. (Graham Declaration, Ex. C, par. 3) There is no dispute that plaintiff (and other, older mileage-pay drivers) was denied this benefit. Therefore, no interpretation of the CBA is required for this issue to be adjudicated. As such, preemption under sec. 301 is unwarranted.

Plaintiff's claim herein requires no interpretation of the CBA for assessment of its validity under the ADEA. As made clear in the depositions of defendant's management member Hadley Bradbury and plaintiff Graham, defendant and plaintiff were both aware the CBA recognizes the allowance of a paid 10-minute break for feeder drivers. (Bradbury Depo, Ex. B, p. 37, ll. 22-24; Graham Depo, Ex. A, p. 53, ll. 16-19) Defendant deliberately chose, it appears, to only compensate its younger feeder drivers for this 10-minute break. (Bradbury Depo, Ex. B, p.

37, ll. 22-24; Graham Declaration, Exh. C, par. 3) The more senior drivers have been discriminatorily denied this paid 10-minute break. Plaintiff was discriminated against in violation of the ADEA due to his age and senior status. These claims are distinct and apart from the terms of the CBA, thus making preemption unwarranted.

The ADEA claim lodged by plaintiff Graham cannot be subject to preemption under Section 301. Accordingly, summary judgment must be denied on this basis.

### C. The *Garmon* Doctrine Does Not Preempt Plaintiff's Compensation Claim

Plaintiff Graham acknowledges that he filed a grievance through his union, and it was withdrawn by Local 41. (Bradbury Depo, Ex. B, p. 38, ll. 20-23) Plaintiff also approached the NLRB. That agency, upon a preliminary review, declined to issue a Complaint as to the matter of plaintiff's compensation concern. (Graham Depo, Ex. A, p. 51, ll. 13-21) These facts do not create a presumption that *Garmon* preemption is appropriate. To the contrary, these facts make clear that the relevant bodies (specifically, the NLRB) did not believe they possessed a relevant role in determining the compensation issue raised by plaintiff.

The NLRB is not an absolute arbiter of disputes arising between employees and their employers whenever a union is present. The lower courts  "are uniform in finding that *Garmon* preemption under the NLRA does not completely preempt state laws so as to provide removal jurisdiction. *See, e.g., Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1399-1400 (9th Cir.1988) Moreover, *Garmon* preemption does not "provide a basis for removal jurisdiction" for state law claims in general. *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146 (10th Cir. 2004). Simple assertions to this effect do not satisfy the requirements for *Garmon* preemption.

The fundamental principle of *Garmon* preemption is that it may apply to issues "which could have been, but w[ere] not" presented to the NLRB. *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1165-1166 (10th Cir. 2004) (citing *Garmon*, 359 U.S. at 244). Additionally, the Supreme Court has indicated that in order to prove that an action or situation could "arguably" be covered under the NLRA,

> the party claiming pre-emption is required to demonstrate that his case is one that the [NLRB] could legally decide in [the suing employee's] favor. That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board. The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation.

*Int'l. Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 395 (1986).  *See also Butcher v. Teamsters Local 955,* No. 18-2424-JAR, 2018 WL 6200027, at *2-3 (D. Kan. Nov. 28, 2018) (noting that although the Supreme Court has characterized *Garmon* preemption as jurisdictional, it has placed the burden of demonstrating it on the party asserting it).

Here, plaintiff's effort to involve the NLRB was rejected by that agency at the initial review step. Simply put, the NLRB did not deem plaintiff's compensation disparity claim to constitute an issue to be decided by the agency. As the court is doubtless aware, NLRB intakes concerns brought to the agency by individuals (or unions), and makes a very initial determination whether a 'complaint' shall be issued charging the wrongdoing entity with a violation of the NLRA. A complaining party, if rejected at this preliminary step by the NLRB, may then fairly conclude the agency has determined it lacks proper authority to consider the matter altogether.

The mere fact that Mr. Graham raised the compensation disparity issue with the NLRB and it decided not to process the claim does not mandate a finding of *Garmon* preemption. (Graham Depo, Ex. A, p. 51, ll. 13-21) As noted above, the agency's determination not to pursue

the matter speaks to the fact that preemption under *Garmon* is without support. For if the NLRB thought otherwise, it was free to issue a Complaint and pursue the matter under its jurisdictional authority. It chose not to do so. In this respect, its decision supports a finding that preemption is logically to be rejected. Defendant's Motion for Summary Judgement should be denied in regard to *Garmon* Doctrine.

**D. Plaintiff Possesses Facts Sufficient to Create a Genuine Issue of Material Fact Relative to the Merits of his ADEA Claim.**

Plaintiff's facts supportive of his ADEA claim are simple. Effectively, plaintiff was denied a financial benefit otherwise provided to his younger, similarly situated colleagues. (Bradbury Depo, Ex. B, pg. 37, ll. 15-18; Graham Declaration, Ex, C, paras. 3-5) These facts support his position that he was subjected to age-related discrimination in violation of the ADEA, which prohibits discrimination against workers who are over forty years old. 29 U.S.C. § 623. Multiple facts support Plaintiff's ADEA Claim. These are identified below and serve to defeat the notion that genuine issues of material fact do not now exist in this matter.

Plaintiff was generally considered to be a mileage-rate feeder driver, well over the age of forty, who was compensated with both hourly and mileage pay for his assigned daily over-the-road run. (Graham Declaration, Ex. C, par. 6) Plaintiff was denied a 10-minute paid daily break while similarly situated, younger, and less experienced feeder drivers received compensation for their 10-minute breaks. (Graham Declaration, Ex. C, par. 3) Defendant admitted in deposition testimony that the feeder drivers who were not paid for their 10-minute breaks were more senior, i.e. older drivers. (Bradbury Depo, Ex. B, p. 34, ll. 12-17; Graham Depo, Ex. A, p. 34, ll. 15-17)

Younger feeder drivers were paid for their 10-minute breaks. (Graham Declaration, Ex. C, par. 3; Bradbury Depo, Ex. B, p. 23, ll. 3-7; p. 29, ll. 12-18; Bradbury Depo, Ex. B, p. 29, ll. 6-23; Bradbury Depo, Ex. B, p. 30, ll. 10-18; Bradbury Depo, Ex. B, pg. 37, ll. 15-18; Bradbury Depo, Ex. B, p. 38, ll. 22-24) The CBA allows for this paid break. (Bradbury Depo, Ex. B, p. 37, ll. 22-24; Graham Depo, Ex. A, p. 53, ll. 16-19) Eric Miller, Craig Main, Jamie Masters, Scott Brown and Sean O'Brien are younger than Plaintiff, and are similarly situated, less experienced feeder drivers who were paid for their 10-minute breaks. (Graham Declaration, Ex. C, par. 4) Plaintiff is unaware of a single younger, hourly-rate feeder driver who was not compensated for their 10-minute break or additional start time work pay. (Graham Declaration, Ex. C, par. 5) Plaintiff also did not give his union the right to waive his ability to be free from age bias in connection with the terms and conditions of his employment, including compensation practices. (Graham Declaration, Ex. C, par. 11) Chris Hoffines, Larry Davidson, Richard Kiblinger and Steve Lombardo were within plaintiff's age range, and were experienced mileage-rate drivers who were also compensated with hourly pay and mileage pay for their assigned daily runs - but not for their 10-minute breaks. (Graham Declaration, Ex. C, par. 7) Defendant UPS did not act in good faith as to treatment of its older, age-protected feeder drivers and at no point did Plaintiff waive his right to be paid in a manner free from age-related discrimination or bias. (Graham Declaration, Ex. C, par. 11)

The facts make clear that Plaintiff endured age discrimination. Hourly-rate drivers - who were younger than Graham - received their paid 10-minute break. (Graham Declaration, Ex. C, par. 3; Bradbury Depo, Ex. B, p. 23, ll. 3-7; p. 29, ll. 12-18; Bradbury Depo, Ex. B, p. 29, ll. 6-23; Bradbury Depo, Ex. B, p. 30, ll. 10-18; Bradbury Depo, Ex. B, pg. 37, ll. 15-18; Bradbury Depo, Ex. B, p. 38, ll. 22-24) Older mileage-rate drivers – such as plaintiff Graham - did not

receive a paid 10-miunte break. (Bradbury Depo, Ex. B, p. 34, ll. 12-17) In this instance, Plaintiff was performing equal work as a feeder driver, in comparison to his younger colleagues. Whether one was an hourly-rate or a mileage-rate driver, one was/is a feeder driver. Each were driving a tractor trailer for defendant. Plaintiff was doing equal work as other feeder drivers, if not more due to his longer-runs status. Yet, plaintiff Graham was not compensated equally.

Defendant UPS is aware of its wrongful practices. Defendant UPS lead Plaintiff to believe his "seniority status" was positive. In turn it misled plaintiff and denied plaintiff and other mileage drivers the equal benefit of a paid daily break period. Defendant UPS did not act in good faith, and in compliance with the ADEA, as to the treatment of its older drivers. Defendant's management member Hadley Bradbury was unable to explain why younger, hourly-rate drivers are treated differently than older, mileage feeder drivers. (Graham Depo, Ex. A, p. 50, ll. 9-15; Graham Depo, Ex. A, p. 60, ll.10-15). Defendant has a duty to uphold nondiscriminatory standards. Bradbury, in his deposition, effectively admitted feeder drivers are owed a 10-miute break. (Bradbury Depo, Ex. B, p. 37, ll. 22-24)

Further, and as relates to pretext evidence, defendant offers an abbreviated argument concerning the same. Evidence of pretext is present here. Plaintiff was clearly of retirement age. Defendant believed he was past retirement age. Hadley Bradbury and Scott Wetschensky were UPS management members who repeatedly questioned plaintiff Graham about him entering retirement. (Graham Declaration, Ex. C, par. 10, Graham Depo, Ex. A, p. 41, ll. 10-11; p. 31, ll. 21-22). This behavior reflects an age-based bias. Pretext evidence itself need not be unlawful conduct as defendant contends. It may, instead, be suggestive of inconsistency or contradiction in defendant's factual position. *See, Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997). While the same may not constitute direct evidence of discriminatory animus, it unquestionably reflects

the type of contradictory and/or inconsistent evidence admissible to establish pretext in a situation such as this.

Other contradictions pertinent to a pretext finding exist as well. Defendant's management member Hadley Bradbury openly admitted that mileage drivers such as plaintiff Graham were not truly paid only via a mileage calculation process, i.e. by the mile. Instead, Bradbury conceded that a mileage driver was paid in several differing ways on an hourly basis as well. Such alternative compensation chiefly – but not exclusively – consisted of 'Delay time' and 'Start time' pay which was issued on a time-based calculation.

As such, it becomes clear that the company did not truly regard a 'Mileage driver' as limited to compensation only tied to his daily mileage accrual behind the wheel. Rather, the company construed its obligations to Mileage Drivers such as Mr. Graham as also incorporating payment for out-of-cab matters such as delays and the like. Given this reality, the company's contrary position relative to paid breaks represents the very type of contradictory behavior which pretext evidence may constitute.

## II.    <u>Conclusion</u>

For all the foregoing reasons, plaintiffs request the denial of defendant's motion for summary judgement in this action.

Respectfully Submitted,

LAW OFFICES OF ALBERT F. KUHL
/s/ Albert F. Kuhl
Albert F. Kuhl    KS #12478
9393 W. 110th St., Suite 500
Overland Park, KS 66210
Tel.  913.638.8022

Fax: 913.451.6750
Email: Al@KCjoblawyer.com
ATTORNEY FOR PLAINTIFF

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served upon counsel for defendant, as identified below, via the Court's electronic transmission system on April 20, 2023:

Jeff Hanslick
Bonnie Birdsell
Bayli Martin
LITTLER MENDELSON, P.C.
1201 Walnut Street, Ste. 1450
Kansas City, Missouri 64106
Tel: 816.627.4400
Fax: 816.627.4444
jhanslick@littler.com
bamartin@littler.com
bbirdsell@littler.com
ATTORNEYS FOR DEFENDANT

/s/ Albert F. Kuhl