IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JERRY GRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:22-cv-02227-DDC |
| | ) |
| UNITED PARCEL SERVICE, INC., | ) |
| an Ohio corporation, | ) |
| | ) |
| Defendant. | ) |

### REPLY IN FURTHER SUPPORT OF DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Plaintiff's discrimination claim is preempted by Section 301 of the Labor Management Relations Act and the doctrine first set forth in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). Even if not, this case has nothing to do with age and everything to do with the route on which Plaintiff chose to bid. As a more senior driver, Plaintiff had the option of bidding on an hourly route or a mileage route.[1] And, as a more senior driver, Plaintiff would receive the route on which he bid.

If Plaintiff bid on an hourly route, he would be paid for a ten-minute break, just like every other driver of an hourly route, regardless of the driver's age. And, if Plaintiff bid on a mileage route, he would not be paid for a ten-minute break, just like every other driver of a mileage route, regardless of age.

Plaintiff preferred and bid on mileage routes. With that, Plaintiff was not paid for a ten-minute break. The undisputed facts demonstrate the non-payment was unrelated to Plaintiff's age

---

[1] By hourly route, we mean a route that was less than 500 miles and compensated primarily on an hourly basis. By mileage route, we mean a route that was 500+ miles and compensated primarily on a mileage basis. *See* Pretrial Order (Doc. 38 at § 2.a, ¶¶ 10-11).

1

and was not discriminatory. As a result, UPS is entitled to judgment as a matter of law.

I.     **REPLY TO PLAINTIFF'S ADDITIONAL FACTS**

Plaintiff's additional statements of fact are immaterial, duplicative, or improper as derived from a sham affidavit that contradicts facts Plaintiff already stipulated to in the Pretrial Order and incorporated into Defendant's Memorandum of Law (Doc. 38 at § 2.a; Doc. 40 at 2-3). *See Terry v. Esurance Ins. Co.*, No. 21-CV-1119-EFM, 2022 WL 16571179, at *2 (D. Kan. Nov. 1, 2022) ("A fact is "material" when it is essential to the claim"); *Icon Structures, Inc. v. 84 Lumber Co., L.P.*, No. 19-1009-JWB, 2020 WL 4785404, at *1 (D. Kan. Aug. 18, 2020) ("Factual disputes about immaterial matters are not relevant to the determination before the court."); *Sloan v. Est. of Blake Overton*, No. 08-2571-JAR, 2011 WL 1980311, at *3 (D. Kan. May 20, 2011) ("a sham affidavit is one in which an affiant controverts his or her own prior statement or testimony without reasonable explanation or justification"). Defendant responds to the individual asserted facts as follows:

1. Immaterial in part as Plaintiff does not claim he was not paid for any time he was delayed.

2. Immaterial as Plaintiff does not claim he was not paid for down time.

3. Immaterial as Plaintiff does not claim he was not paid for any time he was delayed.

4. Immaterial as Plaintiff does not claim he was not paid for additional start time work and/or meet point delays.

5. Immaterial as Plaintiff does not claim he was not paid for end of shift work.

6. It is not clear what this fact refers to, but ultimately immaterial as Plaintiff does not claim he was not paid for "extra time invested to do the thing that is happening."

7. Immaterial as Plaintiff was not an hourly rate driver, and duplicative of Stipulated Fact 10. (Doc. 38 at § 2.a.x).

8. Duplicative of Plaintiff's Additional Fact No. 7, and Stipulated Fact No. 10. (Doc. 38 at §§ 2.a.vii and x).

9. Duplicative of Stipulated Facts Nos. 14-15. (Doc. 38 at §§ 2.a.xiv-xv).

10. Undisputed that, in general drivers with more seniority tended to pick mileage-based routes, but also undisputed that Plaintiff stipulated more senior drivers could have (and on at least one occasion did) picked a shorter, hourly-based route as stated in Stipulated Facts Nos. 8 and 13. (Doc. 38 at §§ 2.a.viii and xiii).

11. Immaterial as Plaintiff was not an hourly-rate driver.

12. Undisputed but immaterial.

13. Undisputed but immaterial.

14. Undisputed that the CBA in general provides for a ten-minute break.

15. The cited testimony does not support Plaintiff's assertion that Mr. Thompson could not explain the basis for its decision to withdraw Plaintiff's grievance. Plaintiff testified that Mr. Thompson told him the grievance was withdrawn because the ten-minute break was figured into the mileage rate Plaintiff was paid. (Graham Dep., Ex. A to Plaintiff's Opp., 49:10-24).

16. Duplicative of Stipulated Facts Nos. 17-18. (Doc. 38 at §§ 2.a.xvii-xviii).

17. Undisputed, duplicative of Stipulated Facts Nos. 9-11, and 20, and demonstrative of why Plaintiff's claims are preempted. (Doc. 38 at §§ 2.a.ix-xi and xx).

18. Immaterial as to Bradbury's and Wetschensky's personal knowledge of the reason the Union-negotiated pay system was set up as it was.

19. The Court should disregard the first sentence as it is an assertion established by Plaintiff's affidavit that contradicts his previous admission and stipulation in Stipulated Facts Nos. 8 and 13 that at least one driver who is older and more senior to him bid on an hourly-rate route. (Doc. 38 at § 2.a.viii and xiii). Undisputed that Plaintiff was a mileage-rate feeder driver at all

times relevant.

20. This assertion is contradicted by the following Stipulated Facts:

- the ten-minute break pay depended on which route the driver bid, as stated in Stipulated Facts Nos. 10-11 (Doc. 38 at §§ 2.a.x-xi);
- no driver who bid on a longer route was separately compensated for a ten-minute break as stated in Stipulated Fact No. 12 (Doc. 38 at § 2.a.xii);
- a driver older than and more senior to Plaintiff successfully bid on an hourly route and was thus paid separately for a ten-minute break as stated in Stipulated Fact No. 13 (Doc. 38 at § 2.a.xiii);
- the mileage rate and break pay were negotiated by the Union as stated in Stipulated Facts Nos. 19-20 (Doc. 38 at §§ 2.a.xix-xx).

21. Immaterial as none of these individuals drove the longer, mileage-based routes.

22. Immaterial as Plaintiff stipulated that the pay was based on route, and no driver (older or younger) on a mileage-based route was separately paid for a ten-minute break (Doc. 38 at §§ 2.a.x-xii).

23. Undisputed that Plaintiff was paid in the manner negotiated by the CBA.

24. Undisputed that these mileage-rate drivers were not separately paid for ten-minute breaks in accordance with the CBA, as stipulated to in Stipulated Facts Nos. 10-13, 19-20 (Doc. 38 at §§ 2.a.x-xii, xix-xx).

25. Immaterial as Plaintiff has not brought a claim for failure to pay start time work.

26. Undisputed but immaterial.

27. Undisputed but immaterial.

28. Immaterial.

## II. ARGUMENT

### A. Plaintiff's Claim Alleges Breach of the CBA.

There is no independent obligation that UPS pay drivers for a ten-minute break. Instead, the only source of such an obligation is the CBA to which it and the union representing the drivers

4

are parties.

With that, Plaintiff's claim is UPS breached the CBA by not paying him for ten-minute breaks. Such a claim can only be brought in court as a hybrid claim under Section 301 of the LMRA. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983).

It is of no moment that Plaintiff (mis)labels his claim as age discrimination and claims the reason UPS breached the CBA is because of his age, because the gravamen of the claim remains one for breach of the CBA, which is what the Court considers to determine whether the claim truly arises under Section 301. *See Martin v. Lake Cnty. Sewer Co.*, 269 F.3d 673, 679 (6th Cir. 2001); *Vadino v. A. Valey Engineers*, 903 F.2d 253, 266 (3d Cir. 1990). Plaintiff offers no contrary authority showing he may repackage a clear breach of contract claim as one for age discrimination to avoid the effect of Section 301, and further offers no argument showing that he brought his claim within the six-month statute of limitations for hybrid Section 301 claims. *See DelCostello*, 462 U.S. at 172. Judgment should enter because it is undisputed that Plaintiff's claim is truly alleging breach of the CBA under Section 301, and he failed to timely file.

B.  **Resolving Plaintiff's Claim Requires Interpretation of the CBA and is Therefore Preempted.**

Plaintiff's contention that his claim only requires reference to the CBA and is thus not preempted by Section 301 is incorrect. First, it is undisputed that the only source of any entitlement of any employee to break-time pay is the CBA itself. Second, any claim that Plaintiff was not paid for breaks while younger drivers were paid first requires an answer to the question, "What pay were Plaintiff and these other drivers entitled to?" As Plaintiff has stipulated, pay was based exclusively on which route a particular driver received, and routes were based on the seniority bidding system established by the CBA. Any analysis of Plaintiff's claim will therefore necessarily require an understanding of the relevant provisions of the CBA and the agreed-upon processes

5

regarding how bidding works, Plaintiff's and his supposed comparators' place in the bidding process, how pay was negotiated for the different routes, how break time was calculated into the pay for the mileage routes, who chose what route, how the grievance process works, and why the Union withdrew Plaintiff's grievance. The claim is therefore "inextricably intertwined with consideration of the terms of the [CBA]" and is preempted. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988).

### C. Plaintiff Ignores the Substance of Defendant's *Garmon* Argument Showing His Claim is Preempted

Plaintiff's sole response to Defendant's nearly four-page long *Garmon* preemption argument is to focus on a single sentence wherein UPS stated the fact that Plaintiff filed an Unfair Labor Practice claim with the NLRB bolsters a finding of preemption. Plaintiff contends instead that, because the NLRB decided not to process his ULP, it must have conclusively decided that it lacked jurisdiction.[2] The truth of the matter is that no one knows, and there is no evidence suggesting, why the NLRB declined to hear Plaintiff's ULP, and it does not reasonably follow that by doing so the NLRB decided it lacked jurisdiction. "[A]lthough [the Court] must draw all factual inferences in favor of the nonmovant, those inferences must be *reasonable*." *Allen v. Muskogee*, 119 F.3d 837, 846 (10th Cir. 1997) (emphasis added). It is not a reasonable inference that the NLRB conclusively decided it lacked jurisdiction over Plaintiff's ULP when there is a complete absence of evidence regarding the reason for the NLRB's actions. *See Velasquez v. Philips Elecs. N. Am. Corp.*, No. 13-1463-DDC-KMH, 2015 WL 505628, at *9 (D. Kan. Feb. 6, 2015) (declining to draw inference of discrimination from lack of specificity in witness statements about plaintiff

---

[2]Plaintiff also makes the entirely irrelevant argument that *Garmon* does not provide a basis for removal of state law claims. Defendant is moving for summary judgment, not seeking removal, and Plaintiff has no state law claims because the Court already dismissed his claim for violation of the Kansas Wage Payment Act. (Doc. 29).

absent any evidence how the ambiguity demonstrated discrimination); *Heritage Fam. Church, Inc. v. Kansas Dep't of Corr.*, No. 18-01259-EFM-KGG, 2018 WL 6065248, at *8 (D. Kan. Nov. 20, 2018) (declining to draw inference of intent from use of a seemingly innocuous word as although plaintiff's "interpretation of this statement is not entirely implausible, it is hardly the only—or the most obvious—inference."). Plaintiff's suggestion that the Court should infer the NLRB conclusively found it lacked jurisdiction is entirely unreasonable, and the Court should decline to make such an inference.

By focusing entirely on one unreasonable inference, Plaintiff fully ignores, and thus concedes, UPS's detailed explanation that Plaintiff is seeking to require UPS to engage in "direct dealing," a ULP under Section 8(a)(5) of the NLRA, which brings it under the exclusive jurisdiction of the NLRB. *See Ryan Iron Works, Inc. v. NLRB*, 257 F.3d 1 (1st Cir. 2001); *McDaniel Ford, Inc.*, 322 N.L.R.B. 956 (1997). *See also*, *Iweha v. Kansas*, No. 21-1228-DDC, 2023 WL 2837824, at *27 (D. Kan. Apr. 7, 2023) (plaintiff abandoned claim by failing to oppose defendant's argument on causation in summary judgment motion) (citing *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768 (10th Cir. 2001) (affirming district court's summary judgment against plaintiff's claim because plaintiff had "abandoned [the] claim by failing to address it in his response to defendants' motion for summary judgment"). By conceding that he claims UPS should have engaged in direct dealing, Plaintiff concedes that his claim falls within the exclusive jurisdiction of the NLRB, and it is therefore preempted by the *Garmon* doctrine.

### D.     There is Still No Triable Issue as to Plaintiff's ADEA Claim.

Even if Plaintiff were correct that his claim is not preempted, he has already stipulated to all the material facts that undisputedly show judgment should enter for UPS on his ADEA claim. Plaintiff stipulated that his pay was entirely and exclusively dependent on which route he drove, that all drivers on mileage-based routes are not paid separately for a ten-minute break, and that he

was of his own choosing driving a mileage-based route at all relevant times. The route-bidding process was based on seniority, and it so happened that most, but not all, of the senior drivers bid on the mileage-based routes that did not include separate ten-minute break pay. UPS did not *require* senior drivers to bid on the mileage-based routes, but merely gave them first choice in accordance with the CBA. Plaintiff has admitted that he could have selected an hourly-based route that did pay separately for ten-minute breaks, and that at least one driver older and more senior to him selected such a route,[3] but he chose not to. Plaintiff has also stipulated that not a single driver, younger or older than Plaintiff, who drove a mileage-based route was separately paid for break time. It is undisputed, therefore, that Plaintiff was not subject to any adverse employment action as he was paid in accordance with the CBA, and he cannot identify any younger driver who was treated more favorably than he. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (ADEA elements).

That Plaintiff now, for the first time in his Opposition, identifies several supposed comparators does not save his claim. Plaintiff offers no evidence sufficient to demonstrate that these drivers are proper comparators. First, he does not indicate which route they were on such that there is a genuine issue of fact whether they were similarly situated to Plaintiff and received a benefit he was denied, or if they were merely hourly drivers who were entitled to break-time pay under the CBA.[4] Because there is a complete absence of evidence that these drivers were on the

---

[3] Plaintiff also repeatedly and incorrectly conflates "seniority" with "age." Bradley disabused him of this notion in his deposition when Plaintiff asked whether it was fair to state that more senior drivers were by definition older, to which Bradley answered, "not necessarily" and explained that seniority is based on term of service, and some employees begin quite young so they can rack up many years of service while still being younger than other employees. *See* Pl. Opp., Ex. B, 34:12 - 35:6.

[4] Plaintiff did refer to four proper comparators, but by doing so merely proves Defendant's point. He asserts that four other similarly aged mileage-rate drivers were also not separately paid for ten-minute breaks. *See* Pl. Additional Fact No. 24. He is correct because, as Plaintiff admitted, mileage-rate drivers are not so paid pursuant to the CBA.

same route as Plaintiff, and thus subject to the same standards and entitled to the same benefits under the CBA, they are not proper comparators and the Court should disregard them. *See Magruder v. Runyon*, 844 F. Supp. 696, 702 (D. Kan. 1994), aff'd, 54 F.3d 787 (10th Cir. 1995) (comparator must be "similarly situated *in all respects*" including subject to same standards) (emphasis in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Second, even if he did state these individuals were mileage-based drivers, Plaintiff cannot create a dispute of fact by affidavit contradicting a prior stipulation. *See Sloan*, 2011 WL 1980311, at *3. He stipulated that that not a single driver, younger or older than Plaintiff, who drove a mileage-based route was separately paid for break-time. The Court should disregard Plaintiff's post-stipulation attempt to manufacture a dispute of fact by sham-affidavit.

Finally, Plaintiff fails to rebut Defendant's argument that there is no evidence that the legitimate, nondiscriminatory reason for how Plaintiff was paid was pretext. Plaintiff merely reiterates that he was questioned about his retirement plans, but ignores the binding case law cited in Defendant's Memorandum noting "an employer may make reasonable inquiries into the retirement plans of its employees." *Maughan v. Alaska Airlines, Inc.*, 281 F. App'x 803, 807 (10th Cir. 2008) (quoting *Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 497 (8th Cir. 1998) (citing cases holding as such from the Fifth, Sixth and Seventh Circuits). *See also Wagoner v. Pfizer, Inc.*, 391 Fed. Appx. 701, 708 (10th Cir. 2010) (supervisor's inquiry into plaintiff's retirement plans did not raise inference of age discrimination and was an "isolated incident" that cannot support discrimination claim); *Miller v. Jefferson Cnty. Bd. of Cnty. Commissioners*, No. 16-CV-2445-JWL, 2018 WL 1116673, at *9 (D. Kan. Mar. 1, 2018) (inquiry into retirement plans of fifteen subordinates not evidence of discriminatory animus where there was no evidence of other comments made, or employees forced to retire). It is undisputed that Plaintiff was retirement-eligible, and Defendant did not try to force or convince Plaintiff to retire or make any negative

comments about age. Thus, as a matter of law there was nothing improper about Defendant inquiring as to his retirement plans and it cannot be pretext for discrimination.

## III.     CONCLUSION

For the reasons stated above, as well as those stated in Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, Defendant asks that the Court grant its motion, and enter judgment in favor of Defendant on Plaintiff's remaining claim.

Respectfully submitted,

*/s/ Jeffrey D. Hanslick*
Jeffrey D. Hanslick, #22612
Direct: 816.627.4408
E-Fax: 816.817.2517
jhanslick@littler.com
Bonnie Birdsell, #78895
Direct: 816.627.4412
E-Fax: 816.817.1957
bbirdsell@littler.com
Bayli Martin, #28301
Direct: 816.627.4414
E-Fax: 816.817.1831
bamartin@littler.com
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of May, 2023, a true and correct copy of the foregoing was electronically submitted via the Court's e-filing system, which generated notice of same to the following counsel of record:

Albert F. Kuhl
LAW OFFICES OF ALBERT F. KUHL
9393 West 110th Street, Building 51
Suite 500
Overland Park, KS 66210
Al@KCjoblawyer.com

**ATTORNEY FOR PLAINTIFF**

*/s/ Jeffrey D. Hanslick*
**ATTORNEY FOR DEFENDANT**