IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JERRY GRAHAM,

       Plaintiff,

v.                                                                    Case No. 22-2227-DDC

UNITED PARCEL SERVICE, INC.,

       Defendant.

_____

## MEMORANDUM AND ORDER

Plaintiff Jerry Graham sued defendant United Parcel Service, alleging that defendant had violated the Age Discrimination in Employment Act (ADEA) because defendant withheld compensation from him during the final three years of his employment based on his age. 29 U.S.C. §§ 621–34. This matter is before the court on defendant's Motion for Summary Judgment (Doc. 39). Defendant argues that the National Labor Relations Act, 29 U.S.C. §§ 151–69, preempts plaintiff's suit, and that he fails to identify a triable issue of age discrimination under ADEA. Also, defendant denies discriminating against plaintiff based on age and argues that it appropriately compensated him consistent with their collectively bargained labor agreement. The matter is briefed fully, and after considering the parties' arguments, the court grants defendant's Motion for Summary Judgment (Doc. 39).

## I.      Background

The following facts come from the facts stipulated in the Pretrial Order (Doc. 38) and from depositions and other aspects of the summary judgment record, all viewed in the light most favorable to plaintiff, as the non-moving party.

Plaintiff worked as a feeder driver for defendant for 43 years before retiring in April 2020.  Doc. 38 at 2, 3 (Pretrial Order ¶¶ 2.a.i., xxi.).  Throughout his employment, plaintiff belonged to a labor union (Union).  Doc. 43-1 at 13 (Pl.'s Dep. 13:4–7).  Plaintiff's Union negotiated terms and conditions of his (and other employees') employment with defendant in a collective bargaining agreement (CBA).  Doc. 38 at 2 (Pretrial Order ¶ 2.a.ii.).  The court explains, first, the terms of the CBA, then outlines pertinent aspects of plaintiff's tenure at UPS, and finally, identifies the facts dispositive of plaintiff's ADEA claim against defendant.

A.    **Collective Bargaining Agreement**

Under the Collective Bargaining Agreement between defendant and plaintiff's Union, feeder drivers, like plaintiff, can bid annually on two different kinds of routes:  shorter routes (fewer than 500 miles roundtrip) or longer routes (500 or more miles roundtrip).  Doc. 38 at 2 (Pretrial Order ¶¶ 2.a.iv., 2.a.x., 2.a.xi.).  The CBA provides that defendant compensates feeder drivers differently depending on whether they drive a short route or a long route.  *Id.*  On the short routes, defendant compensates feeder drivers on an hourly basis, and also pays them for a 10-minute break.  *Id.* (Pretrial Order ¶ 2.a.x.).  The hourly-based feeder driver position also includes "yard jobs," ones where employees don't leave defendant's property.  Doc. 43-1 at 22 (Pl.'s Dep. 22:19–25).  In contrast, for drivers driving long routes, defendant compensates feeder drivers on a mileage basis plus hourly compensation during delay or other unforeseen circumstances that may interrupt the job—think:  flat tire, traffic jam, or snowstorm.  Doc. 38 at 2 (Pretrial Order ¶ 2.a.ix.); Doc. 43-2 at 8, 9 (Bradbury Dep. 22:1–6, 26:3–12).  Feeder drivers who are driving long routes aren't paid separately for a 10-minute break.  Doc. 38 at 2 (Pretrial Order ¶ 2.a.xi.).

The routes that defendant's drivers select depends on a bidding system.  The CBA establishes the rules used for bidding jobs.  *Id.* (Pretrial Order ¶ 2.a.v.).  Drivers can bid on which type of route they'd prefer, with senior drivers having priority over junior drivers.  *Id.* (Pretrial Order ¶ 2.a.vi.).  Defendant offers fewer long routes than short routes.  Doc. 43-1 at 48 (Pl.'s Dep. 48:16–21).  Generally, drivers tend to prefer long routes because "it's easier work" and compensates better than short routes.  *Id.* (Pl.'s Dep. 48:6–10); Doc. 43-2 at 10 (Bradbury Dep. 32:17–21).  On balance, older feeder drivers tend to have more seniority and they bid on desirable mileage routes, leaving younger, junior feeder drivers to drive the hourly routes.  Doc. 43-1 at 48 (Pl.'s Dep. 48:1–5).

## B.    Plaintiff's Tenure at UPS

From 1997 to 2018, plaintiff worked as a feeder driver with a "yard job."  *Id.* at 22 (Pl.'s Dep. 22:14–21).  Plaintiff worked the yard job position because he had a medical condition preventing him from holding a Department of Transportation medical card, a requirement for over the road drivers.  *Id.* (Pl.'s Dep. 22:3–13).  In the yard job, plaintiff "moved trailers to be unloaded . . .[,] pulled full outbound trailers off [,] . . . assemble[d] doubles, [and] disconnect[ed] doubles."  *Id.* at 23 (Pl.'s Dep. 23:17–22).  Under the CBA, defendant compensated plaintiff by the hour for his work in this job.  *Id.* (Pl.'s Dep. 23:1–9).

UPS operates at three different locations around the Kansas City metropolitan area: Lenexa, Edgerton, and James Street.  Doc. 43-1 at 26 (Pl.'s Dep. 26:20–22).  In 2018, the James Street UPS location posted a "pick up" role available to drivers who worked as hourly feeder drivers—including plaintiff.  *Id.*  The added "pick up" required drivers to hold a DOT license because they might have to leave defendant's property to take a trailer to a business, or pick up goods from a business.  *Id.* at 24 (Pl.'s Dep. 24:13–18).  But the position never became a viable

job for employees to bid on because the Lenexa and Edgerton UPS locations didn't also post the "pick up" role. *Id.* at 27 (Pl.'s Dep. 27:2–12). Around this same time, DOT changed its licensing rules. And these changes permitted plaintiff to apply for a DOT medical card waiver. *Id.* at 23–24 (Pl.'s Dep. 23:23–24:1). Plaintiff secured the DOT waiver and continued working as an hourly feeder driver working as a yard job driver until defendant posted a mileage route for bid. *Id.* at 25 (Pl.'s Dep. 25:9–15).

From 2018 to when he retired in 2020, plaintiff bid on and drove a mileage route. *Id.* at 15 (Pl.'s Dep. 15:15–17). Consistent with the CBA, plaintiff's compensation switched from hourly (in the yard job) to mileage-based (in his new position). *Id.* at 12–13 (Pl.'s Dep. 12:21–13:3). Plaintiff was number six in seniority, and so he could secure whichever route he selected. *Id.* at 19 (Pl.'s Dep. 19:4–15). So, plaintiff had the option to: (1) stay in his yard job position with hourly compensation and enjoy paid 10-minute breaks; (2) drive short routes with hourly compensation and paid 10-minute breaks; or (3) drive long routes with mileage plus delay compensation, but without 10-minute paid breaks. *Id.* at 26, 44 (Pl.'s Dep. 26:18–23, 44:3–19). Plaintiff selected the third option. *Id.* at 25, 27 (Pl.'s Dep. 25:10–18, 27:18–23).

### C.  Facts Pertinent to Plaintiff's Age Discrimination Suit

Plaintiff reviewed his pay stubs after switching to the mileage route driver position, and realized defendant hadn't paid him for 10-minute breaks, as it had while he was working in his yard job role. *Id.* at 59 (Pl.'s Dep. 59:12–18). Plaintiff filed a grievance with his Union about the unpaid breaks. *Id.* at 49 (Pl.'s Dep. 49:2–24). John Thompson, the Union's business agent responsible for handling grievances, decided to withdraw plaintiff's grievance because the mileage compensation-rate accounted for a 10-minute break. *Id.*; Doc. 38 at 3 (Pretrial Order ¶ 2.a.xvii.). Thompson explained to plaintiff that the CBA calculates any break-time into the

mileage rate.  Doc. 43-1 at 49–50 (Pl.'s Dep. 49:23–50:2); *see also* Doc. 43-2 at 13 (Bradbury

Dep. 43:6–18).  Plaintiff then unsuccessfully challenged the Union's withdrawal of his grievance

before the National Labor Relations Board (NLRB).  Doc. 38 at 3 (Pretrial Order ¶ 2.a.xviii.).

Plaintiff then retired from UPS in April 2020.  *Id.* at 2, 3 (Pretrial Order ¶¶ 2.a.i., xxi.).

On April 15, 2020, plaintiff sued defendant, alleging that defendant had violated ADEA

for two reasons.[1]  *See* Doc. 1 at 3–4 (Notice of Removal).  Plaintiff argues that defendant

discriminated against him based on age because (1) defendant compensated younger drivers for

10-minute breaks, but not him and (2) plaintiff's supervisors asked him about his retirement

plans.  Doc. 38 at 4 (Pretrial Order ¶ 3.a.).  On the second point, plaintiff alleged that two

members of UPS management—Scott Wetschensky and Hadley Bradbury—asked him several

times about his expected retirement date.  Doc. 43-1 at 31–32, 36 (Pl.'s Dep. 31:18–32:18, 36:9–

15).  Each time, plaintiff responded that he didn't know yet when he planned to retire.  *Id.* at 34,

36 (Pl. Dep. 34:2–5, 36:19–22).  And, according to plaintiff, Wetschensky and Bradbury never

replied to plaintiff's answer about his retirement plans.  *Id.*  Also, plaintiff testified that neither

Wetschensky nor Bradbury nor anyone else at UPS ever encouraged him to retire, suggested that

it was time for him to retire, or suggested that his age was an issue in his employment.  Doc. 43-

1 at 31–38 (Pl.'s Dep. 31:18–38:16).  Plaintiff concedes that he retired voluntarily.  Doc. 38 at 3

(Pretrial Order ¶ 2.a.xxi.).

## II.    Procedural Background

On March 23, 2023, defendant filed a Motion for Summary Judgment, denying that it had

discriminated against plaintiff based on his age, and argues that the terms of the CBA treat the

paid-break issue differently for hourly and mileage-based routes.  Defendant argues that plaintiff

---

[1]    Plaintiff also alleged that defendant had violated the Kansas Wage Payment Act, Kan. Stat. Ann.
§§ 44-314 and 44-315, but the court dismissed that claim on December 30, 2022.  Doc. 29 (Mem. &
Order).

wasn't paid for breaks because he had selected mileage routes that, under the CBA, didn't

include paid breaks—regardless of the drivers' age.  *Id.* at 5–6 (Pretrial Order ¶ 3.b.).  Defendant

makes six distinct arguments to support its Motion for Summary Judgment:  (1) defendant asserts

that plaintiff actually asserts a breach of contract claim, but styles it as an ADEA claim to

circumvent preemption issues; (2) the court should construe plaintiff's ADEA claim as a breach

of contract claim; (3) section 301 of the Labor Management Relations Act (LMRA) completely

preempts plaintiff's claim;[2] (4) section 301 of the LMRA time-bars his claim;[3] (5) the NLRB

retains exclusive jurisdiction over plaintiff's claim under *San Diego Building Trades Council v.*

*Garmon*, 359 U.S. 236 (1959);[4] and (6) even as an ADEA claim, plaintiff fails to adduce facts

sufficient to establish a triable issue whether defendant's decision not to compensate him for

breaks was based on his age.  *See* Doc. 40.

Plaintiff responded (Doc. 43), disputing defendant's characterization that he's recycled

his CBA dispute as an age discrimination case.  Defendant replied (Doc. 46), reiterating its

---

[2]     In 1935, Congress passed the NLRA, protecting employees' rights to unionize.  29 U.S.C. § 157.
The NLRA permitted collective bargaining agreements and established the NLRB to adjudicate labor
disputes.  *Id.* at § 153.  In 1947, Congress passed the LMRA, amending the NLRA and prohibiting unfair
labor practices by unions.  *Id.* at § 185.  A "pure" § 301 action under the LMRA "involves a union suing
an employer for breach of a collective bargaining agreement."  *Serv. Emps. Int'l. Union Loc. 36 v. City*
*Cleaning Co.*, 982 F.2d 89, 94 n.2 (3d Cir. 1992) (citation omitted).  A "hybrid" LMRA § 301 "action
involves a union member suing the employer for breach of the collective bargaining agreement, and his or
her union for breaching its duty of fair representation."  *Id.* (citation omitted).  "The 'hybrid' suit is a
judicially created exception to the general rule that an employee is bound by the result of grievance or
arbitration remedial procedures provided in a collective-bargaining agreement."  *Edwards v. Int'l Union,*
*United Plant Guard Workers of Am.*, 46 F.3d 1047, 1051 (10th Cir. 1995).

[3]     The Supreme Court and Tenth Circuit apply "the six-month statute of limitations prescribed by
§ 10(b) of the LMRA, 29 U.S.C. § 160(b), to 'hybrid' § 301/unfair representation suits charging an
employer breached a collective-bargaining agreement and the union breached its duty of fair
representation."  *Edwards*, 46 F. 3d at 1050 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151
(1983)).

[4]     Under *Garmon* preemption, the NLRB has exclusive jurisdiction over "activities that are arguably
protected or prohibited by the NLRA."  *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1165 (10th Cir. 2004)
(citing *Garmon*, 359 U.S. at 244).

preemption arguments, and maintaining that even if plaintiff asserts a cognizable age discrimination claim, he has failed to identify a triable issue because he failed to demonstrate that defendant had treated him differently than a similarly situated younger employee.

Below, the court assesses defendant's arguments in support of its Motion for Summary Judgment. This analysis begins with the well-known summary judgment standard, followed by the analysis applied to ADEA claims.

### III.    Legal Standard

Under Fed. R. Civ. P. 56(a), a party may move for summary judgment by "identifying each claim . . . on which summary judgment is sought," and showing "that there is no genuine dispute [of any] material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1460 (D. Kan. 1995).  When it applies this standard, the court "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation and internal quotation marks omitted).  To meet this burden, the moving party "need not negate the non-

movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citation and internal quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). Thus, to survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.*

Finally, summary judgment isn't a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it serves an important procedural role, "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). An ADEA plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009); *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278–79 (10th Cir. 2010) (clarifying that *Gross* supplements, rather than displaces, the *McDonnell Douglas* framework). "A plaintiff in an employment discrimination

case proves discrimination by direct evidence when she presents proof of an existing policy which itself constitutes discrimination." *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996) (internal quotation marks and citation omitted). "In cases brought under . . . the ADEA where circumstantial evidence is the basis for the claim, our analysis at the summary judgment stage is governed by the burden-shifting framework laid out in *McDonnell Douglas*[.]" *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

Under the *McDonnell Douglas* framework, plaintiff bears the initial burden of production to establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "To establish a presumption is to say that a finding of the predicate fact (here, the prima facie case) produces a required conclusion in the absence of explanation (here, the finding of unlawful discrimination)." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citation and internal quotation marks omitted).

## IV.    Analysis

Because plaintiff insists that his Complaint asserts an age discrimination claim, and not a breach of contract claim, the court decides defendant's summary judgment motion based on ADEA alone. Thus, the court doesn't reach defendant's LMRA arguments or the *Garmon* preemption issue because plaintiff explicitly concedes that he's not making a claim for breach of contract. *See* Doc. 43 at 7 (Pl.'s Resp.) ("Plaintiff is not arguing that he was the victim of a breach of contract under the CBA. Plaintiff was discriminated against by defendant due to his age."). And that concession, one the court accepts, nullifies the LMRA and *Garmon* issues.[5]

---

[5]    Saying a bit more, the court isn't convinced that there's a preemption issue under § 301 of the LMRA because plaintiff's claim here doesn't require the court to interpret any term of the CBA. In this sense, resolving plaintiff's claim here does not "depend[] on the meaning of the terms of the CBA." Doc. 40 at 10 (Def.'s Mem. Supp. Mot. Summary Judgment), citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988). Nor is the court convinced that plaintiff's ADEA claim here raises a *Garmon* preemption issue. As defendant correctly explains, such a preemption issue would arise if

In ADEA suits, the plaintiff carries the initial burden of establishing age discrimination. *McDonnell Douglas*, 411 U.S. 802; *see also Lucero v. Sandia Corp.*, 495 F. App'x 903, 909 (10th Cir. 2012). Plaintiff may satisfy this initial burden either by adducing direct evidence of age discrimination or, instead, adduces circumstantial evidence and using the *McDonnell Douglas* burden-shifting framework. *See Gross*, 557 U.S. at 177–78. The *McDonnell Douglas* framework involves a three-step analysis. *Garrett*, 305 F.3d at 1216. At step one, the plaintiff must establish a prima facie case of discrimination. *Id.*; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). If plaintiff satisfies this burden at the first step, the burden then shifts to step two, requiring defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Khalik*, 671 F.3d at 1192 (citing *Garrett*, 305 F.3d at 1216). If defendant shoulders this burden at step two, the burden then shifts back to plaintiff at step three. There, he must demonstrate that plaintiff's protected status—here, age—was a determinative factor in the employment decision or that the employer's explanation is pretext. *Id.*

The court analyzes defendant's ADEA arguments in subparts A, B, and C, below. Since plaintiff hasn't argued that defendant directly discriminated against him, the court uses the *McDonnell Douglas* framework. *See* Doc. 43 at 11–14 (Pl.'s Resp.) (adducing circumstantial evidence instead of "an existing policy which itself constitutes discrimination"); *Tomsic*, 85 F.3d at 1477. Defendant asks the court to grant summary judgment against plaintiff's age

---

plaintiff claimed that "he should [have been] paid differently from all other members of his bargaining who, like him, successfully bid on a longer route that is paid primarily by mileage." Doc. 40 at 14. But that isn't the gist of plaintiff's ADEA claim here. By necessity, his discrimination claim asserts that defendant treated him differently than it treated similarly situated, younger workers. And it *shouldn't* have done so. Defendant asserts that, if plaintiff's suit succeeds on the ADEA claim, it will force defendant to violate the NLRA. But courts have concluded that the NLRA doesn't preempt the ADEA. *See Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1448–49 (5th Cir. 1992). Plaintiff's non-NLRA federal claims arise under the ADEA, which provides independent federal remedies.

discrimination claim for two basic reasons.  *First*, defendant argues that plaintiff cannot establish a prima facie case, and plaintiff's case therefore fails at the first step as a matter of law.  *Second*, defendant contends that even if plaintiff could establish a prima facie case, defendant has proffered a legitimate, nondiscriminatory reason why it didn't pay plaintiff for his breaks once he began driving mileage-based routes.  And *third*, defendant argues that plaintiff has failed to identify a triable issue of pretext.  The court begins with plaintiff's burden to establish a prima facie case of age discrimination.

> ### A.    Prima Facie Case

The Tenth Circuit has adopted a four-part test for the prima facie case in ADEA cases.  In 2011, in *Jones v. Oklahoma City Public Schools*, the Tenth Circuit held that an ADEA plaintiff must show he:

1.  is a member of the class protected by ADEA;

2.  suffered an adverse employment action;

3.  was qualified for the position at issue; and

4.  was treated less favorably than others not in the protected class.

617 F.3d at 1279 (citation omitted); *see also Hutchins v. Cessna Aircraft Co.*, 589 F. App'x 874, 876–77 (10th Cir. 2014).  "The Tenth Circuit liberally defines the phrase 'adverse employment action.'"  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (citation omitted).  The elements of a prima facie case "are neither rigid nor mechanistic[.]"  *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008).  Instead, "their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor."  *Id.*  Ultimately, the burden of establishing a prima facie case is "'not onerous.'"  *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (quoting *Tex.*

*Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  "This is particularly true in an age discrimination case." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020).

"To make a comparison demonstrating discrimination, the plaintiff must show that the employees were similarly situated." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532 (10th Cir. 1994).  This requirement means an ADEA plaintiff must show that his employer treated him and similar employees differently.  Thus, ADEA plaintiffs "must show that they essentially did the same type of work as the employees they point to for purposes of comparison." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1171 (10th Cir. 1998) (citation and internal quotation marks omitted).  "[W]hether employees are similarly situated—*i.e.*, whether they are 'similar in all material respects,'—is a fact-intensive inquiry, and what facts are material will vary depending on the case." *Lucero*, 495 F. App'x at 909 (citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010)).  "In determining whether employees are similarly situated, a court compares relevant employment circumstances such as work history and company policies." *Creason v. Seaboard Corp.*, 263 F. Supp. 2d 1297, 1307 (D. Kan. 2003) (overruled on other grounds by *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018)).  The court also considers whether employees "worked in similar positions," *Cone*, 14 F.3d at 532, "report[ed] to the same supervisor," and were "held to the same standards." *Roberts*, 733 F.3d at 1310.  And, "it falls on the employee alleging discrimination to rule out alternative explanations" for the employer's disparate treatment. *Roberts v. Int'l Bus. Machines Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013).

Here, for purposes of summary judgment, the parties agree that plaintiff has established the first three prongs of the prima facie test.  That is, plaintiff has shown that he:  (1) is a member

of the protected age group (67 years old); (2) he suffered an adverse employment action (defendant didn't pay plaintiff for 10-minute breaks); and (3) plaintiff was qualified for the position at issue, *i.e.*, plaintiff could've bid on hourly or mileage routes.  Doc. 38 at 2–3 (Pretrial Order ¶ 2.a.viii., xii., xxiii.).  But the parties disagree whether plaintiff satisfies his prima facie burden on the fourth prong, one requiring plaintiff to show he could establish that defendant treated plaintiff less favorably than others not members of the protected class.

Plaintiff claims that he suffered adverse employment action because defendant didn't pay him for 10-minute breaks after he bid for and received assignments to work as a mileage-based route driver.  He claims he was treated differently than younger workers and notes that defendant paid younger employees working yard jobs and short routes for 10-minute breaks.  But none of those drivers were similarly situated as plaintiff.

Hourly feeder drivers and mileage feeder drivers aren't "similar in all material respects" because they perform different duties and work under different pay structures.  The CBA dictates compensation they receive for those two distinct kinds of jobs.  In other words, they aren't similarly situated because the CBA requires defendant to compensate them differently.  And the basis for differentiation has nothing to do with age.  *See Lucero*, 495 F. App'x at 909 (citation and internal quotation marks omitted).  Because plaintiff worked as an hourly feeder driver with a yard job before switching to a mileage feeder driver route, the court outlines the material differences between the yard job and mileage route position.[6]

---

[6]     Plaintiff testified that "feeder driver" position includes his work in the yard job position.  Doc. 43-1 at 22 (Pl.'s Dep. 22:5–25) ("From 1997 to 2018 . . . I was a feeder driver.  A feeder driver working in the yard at the facility is a feeder driver.").  In other words, the hourly feeder driver position refers both to employees who drive routes under 500 miles round-trip (shorter routes) and employees who work on defendant's property (yard jobs).

As an hourly feeder driver, plaintiff reported for work to the James Street location and remained on defendant's property.[7]  Doc. 43-1 at 22–23 (Pl.'s Dep. 22:19–23:22).  Plaintiff described his tasks:  "We moved trailers to be unloaded.  We pulled full outbound trailers off.  Sometimes you had to assemble doubles, disconnect doubles."  *Id.* at 23 (Pl.'s Dep. 23:10–22).  Defendant compensated plaintiff on an hourly basis while working in this feeder driver position.  *Id.* (Pl.'s Dep. 23:1–9).  The Union and defendant negotiated the hourly rate and included it in the CBA.  *Id.* (Pl.'s Dep. 23:4–6).  Until 2018, when James Street added "pick-up" responsibilities to plaintiff's yard driver job, plaintiff didn't need a DOT medical waiver for the hourly feeder driver position because he never left defendant's property.  *Id.* at 22 (Pl.'s Dep. 22:5–9).  As a mileage-based feeder driver, plaintiff reported for work at the James Street location and drove a "hooked up," "loaded" trailer west-bound from Kansas City to WaKeeney, Kansas.  *Id.* at 16–17 (Pl.'s Dep. 16:20–17:6).  At Wakeeney, plaintiff met an east-bound driver from Denver and passed the trailer to the other driver.  Plaintiff described his tasks in this mileage-based feeder driver role this way:

> You have to disconnect your trailer and reconnect to the trailer the Denver driver brings you, post-trip, pre-trip, and leave. . . .  [For pre-trip] [y]ou have to examine your equipment, check your tires, brakes, lights, make sure you have paperwork for the trailer, trailer number, seal numbers all match. . . .  You have to post-trip your equipment to make sure that nothing has gone wrong with it in the trip back:  flat tire, mud flap loose, anything that's wrong with that.

*Id.* at 16, 17 (Pl.'s Dep. 16:4–11, 17:22–25).  Defendant compensated plaintiff based on mileage driven plus an hourly rate for delays, such as an "impassable road."  *Id.* at 14, 17 (Pl.'s Dep. 14:18–19, 17:7–20).  The Union and defendant negotiated the hourly rate and included it in the CBA.  *Id.* at 13 (Pl.'s Dep. 13:4–11).  Plaintiff needed a DOT medical waiver for the mileage

---

[7]     Plaintiff testified about working the yard job at the James Street location.  But he testified also that the start-times and locations for yard driver jobs changed during his 21 working years in that role.  Doc. 43-1 at 23 (Pl.'s Dep. 23:10–16).  His duties, however, remained constant throughout.  *Id.*

feeder driver position because he left defendant's property while working in that role. *Id.* at 24, 25 (Pl.'s Dep. 24:11–12, 25:4–12).

To satisfy the fourth prong of his prima facie burden, plaintiff must adduce facts that defendant treated him less favorably than other employees who are not members of the protected class—*i.e.*, age. Plaintiff "must show that [he] essentially did the same type of work" as the younger employees to which he compares himself. *Beaird*, 145 F.3d at 1171. Plaintiff improperly compares his experience as a mileage-based feeder driver to younger, hourly feeder drivers. This comparison is an improper comparison because mileage and hourly feeder drivers aren't "similar in all material respects." *Lucero*, 495 F. App'x at 909; *Cone*, 14 F.3d at 532. Indeed, hourly and mileage feeder drivers perform different duties, at different locations, and are compensated under different pay-structures. Plaintiff doesn't adduce facts that defendant treated him less favorably than similarly situated younger employees because he draws comparisons to dissimilarly situated employees. Plaintiff thus fails to satisfy the fourth element of a prima facie case.

While the court properly could end its analysis here, the court nonetheless continues with the *McDonnell Douglas* analysis. Part B, next, evaluates whether defendant has provided a legitimate, non-discriminatory reason for the alleged discrimination.

### B.      Defendant's Non-Discriminatory Reason for the Adverse Employment Action

If plaintiff had met his burden to establish a prima facie case of age discrimination, the *McDonnell Douglas* framework would shift the burden back to defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action.

"The defendant has to present a legitimate nondiscriminatory reason for its action. If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of

persuasion moves back to the plaintiff." *Cone*, 14 F.3d at 529. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254. The Supreme Court has held that

> an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) (applying the *McDonnell Douglas* framework's second step to an ADEA case).

Here, defendant satisfies its summary judgment burden at step two because it provides evidence explaining why it didn't pay plaintiff for his breaks while working as a mileage-based driver. Specifically, the CBA provides unpaid breaks for mileage route feeder drivers, regardless of the driver's age. The CBA outlines different payment structures for hourly and mileage routes in which the former receives paid 10-minute breaks, but the latter doesn't. Doc. 38 at 2–3 (Pretrial Order ¶¶ 2.a.x.–xiii., xix.–xx.). Defendant also shows that since plaintiff has seniority over other employees, he's sure to draw the route he chooses on his bid. *Id.* (Pretrial Order ¶¶ 2.a.vi.–viii.). In contrast, junior feeder drivers typically work the hourly, paid-break routes, while senior feeder drivers typically self-select mileage, unpaid-break routes. *Id.* at 48–49 (Pl.'s Dep. 48:1–49:1).

In sum, defendant has shouldered its summary judgment burden at the second step of the *McDonnell Douglas* framework. It has produced a legitimate, non-discriminatory reason for the adverse employment action asserted by plaintiff's claim. Defendant didn't pay plaintiff for his 10-minute breaks because the Collective Bargaining Agreement so provided. This showing

takes the analysis to the final step of the *McDonald Douglas* analysis.  Part C, following, analyzes it.

### C.    Pretext

Having met *McDonnell Douglas*'s charge requiring an employer to articulate a legitimate, non-discriminatory reason for plaintiff's unpaid breaks, the burden now shifts back to plaintiff who must adduce evidence capable of supporting a finding that defendant's explanation is pretext.  *McDonnell Douglas*, 411 U.S. at 804.

A plaintiff may demonstrate pretext by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation and internal quotation marks omitted).  "Evidence of pretext may take any number of forms, including evidence the plaintiff 'was treated differently from other similarly-situated employees[.]'" *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).  But "conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis" to deny summary judgment. *Morgan*, 108 F.3d at 1323 (citation and internal quotation marks omitted).

Here, plaintiff argues that he has come forward with a triable question of pretext because his supervisors—Mr. Wetschensky and Mr. Bradbury—asked about his retirement plans on multiple occasions.  He reasons that the retirement questions demonstrate age-based bias, and create a triable pretext question why defendant didn't pay for his 10-minute breaks.  The court evaluates plaintiff's argument, below.

While age-related "comments referring directly to the worker may support an inference of age discrimination" in some contexts, plaintiff must demonstrate a nexus between the age-related comments and the employer's allegedly discriminatory conduct. *Cone*, 14 F.3d at 531 (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)). "Isolated or ambiguous comments are too abstract to support a finding of age discrimination." *Id.* (quotation cleaned up). Age-related comments made "by non-decisionmakers are not material in showing the . . . action was based on age discrimination[.]" *Id.*; *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1287 (10th Cir. 2003) (declining to find manager's age-related comments pretextual because manager didn't "participate in the decision not to renew [plaintiff's] contract").

Also, evidence that plaintiff's employer asked about retirement isn't enough to adduce evidence capable of supporting a finding that defendant's explanation is pretext. An "'employer may make reasonable inquiries into the retirement plans of its employees[.]'" *Maughan v. Alaska Airlines, Inc.*, 281 F. App'x 803, 807 (10th Cir. 2008) (quoting *Cox v. Dubuque Bank & Tr. Co.*, 163 F.3d 492, 497 (8th Cir. 1998) (collecting cases)). A "company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992).

Our Circuit has declined to find a triable question of pretext where management made ageist comments about the plaintiff employee because plaintiff didn't demonstrate a nexus between the statements and her termination. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d at 531 (affirming the trial court's decision to grant summary judgment for employer when management made ageist comments but didn't participate in the decision to terminate employee). In *Cone*, plaintiff Sharon Cone was employed Director of Customer Services at defendant

Longmont United Hospital.  *Id.* at 527.  Defendant followed hospital policy and automatically

terminated Ms. Cone after her approved leave of absence surpassed one year.  *Id.* at 528–29.

The hospital refused to rehire Ms. Cone.  *Id.*  Ms. Cone brought a disparate treatment case

against the hospital, claiming that "her employment with Longmont United Hospital was

unlawfully terminated because of her age."  *Id.*  To support her pretext argument, Ms. Cone

argued that hospital's chief executive officer, Mr. Huey, had

> said that two women over forty-years old . . . [who had been] fired before
> Ms. Cone's leave of absence were terminated because the hospital
> "need[s] some new young blood."  Second, Mr. Huey stated during a
> meeting in May of 1986 that "long-term employees have a diminishing
> return."

*Id.* at 531.  The Tenth Circuit affirmed the lower court's decision granting summary judgment

against plaintiff's claim because she had introduced "no evidence that Mr. Huey participated in

Ms. Cone's automatic termination, and age-related comments by non-decisionmakers are not

material in showing the hospital's action was based on age discrimination."  *Id.*  The court

reasoned that "there is no nexus" between Mr. Huey's comments and the hospital's decision to

terminate Ms. Cone when she failed "to show some correlation between the comments and the

act."  *Id.* at 531–32.

    This analysis applies equally to statements about an employee's retirement.  For example,

our court has declined to find a triable question of pretext where a manager explicitly told

plaintiff to retire because the comments were "isolated" and "unrelated to the challenged

[discriminatory] action."  *Bullard v. Goodyear Tire & Rubber Co.*, No. 09-4024-SAC, 2011 WL

4092192, at *19 (D. Kan. Sept. 14, 2011) (granting employer's motion for summary judgment

because "plaintiff's evidence [was] insufficient to carry her burden of showing pretext")

(brackets, citation, and internal quotation marks omitted).  In *Bullard*, plaintiff sued her former

employer, Goodyear Tire, under ADEA for alleged discriminatory termination. *Id.* at *1. Pfeiffer, a Goodyear Tire manager, told plaintiff that "she should retire and find other work[.]" *Id.* at 7.  Plaintiff also overheard Pfeiffer refer to someone with a gendered and ageist slur. *Id.* But because "Pfeiffer was not involved in the decision to terminate" plaintiff, the court found Pfeiffer's comments unrelated to plaintiff's adverse termination action. *Id.* at *19.  The court thus granted summary judgment for Goodyear Tire because plaintiff didn't "show[] any nexus between this circumstantial evidence and the decision to terminate her." *Id.*

In contrast, the Tenth Circuit has held that an employer's explanation was pretext for age discrimination when plaintiff's supervisor made clear and repeated statements about plaintiff's retirement and the same supervisor subsequently demoted plaintiff, reduced plaintiff's salary, and subjected plaintiff to harassment. *Bruno v. W. Elec. Co.*, 829 F.2d 957 (10th Cir. 1987). There, plaintiff sued his employer, Western Electric Co., under ADEA for discriminatory treatment. *Id.* at 959–60.  Plaintiff adduced evidence that

> his supervisor asked him how old he was and when he was going to retire. When plaintiff replied that he would remain with the company until he was 70, his supervisor stated that he had no plans for plaintiff and stated that he had "a lot of younger people that could offer more to the job."

*Id.* at 963.  Then, the same supervisor twice offered plaintiff early retirement, transferred plaintiff into a new position with increased oversight and decreased pay, and arbitrarily denied plaintiff's leave for vacation. *Id.*

Here, no reasonable factfinder could conclude that defendant's legitimate, non-discriminatory reason for its adverse employment action is pretext for age discrimination. Plaintiff himself has agreed with defendant's non-discriminatory reason because he's acknowledged that the CBA dictates hourly and mileage route payment, and identifies no younger mileage driver who received a paid break.  And, Wetschensky and Bradbury's questions

20

to plaintiff about his retirement plans don't supply a triable issue about pretext because: (1) there's no evidence of any nexus between Wetschensky and Bradbury's retirement questions and the unpaid breaks; and (2) employers may reasonably inquire about employees' retirement plans. *Cone*, 14 F.3d at 531; *Bullard*, No. 09-4024-SAC, 2011 WL 4092192, at *19; *Bruno*, 829 F.2d 963.

To begin, plaintiff hasn't established pretext because he hasn't adduced any evidence of inconsistent treatment based on age. Thus, plaintiff necessarily hasn't identified "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (citation and internal quotation marks omitted). Instead, plaintiff agrees with defendant's legitimate, non-discriminatory explanation. In the Pretrial Order, plaintiff stipulated to each one of the following facts:

- Plaintiff's compensation during the relevant time period [2018-2020] was governed by the CBA.

- Under the CBA, feeder drivers who bid on longer routes (500 or more miles roundtrip) were compensated primarily for mileage plus hourly compensation for specific tasks; *they were not paid separately for a ten-minute break*.

- No feeder driver who successfully bid on a longer route—whether younger or older—was compensated separately for a ten-minute break.

- Plaintiff is not aware of any feeder drivers compensated primarily based on mileage (as opposed to hourly drivers) who were paid for a ten-minute break.

- A feeder driver senior to plaintiff who successfully bid on a shorter route was compensated hourly, including for a ten-minute break.

Doc. 38 at 2, 3 (Pretrial Order ¶ 2.a.ix., xi.–xiii., xvi.) (emphasis added).  In sum, plaintiff hasn't satisfied his burden to adduce evidence of pretext calling defendant's explanation into question.

Additionally, plaintiff hasn't adduced evidence that would permit a reasonable factfinder to infer that defendant's explanation is pretextual because plaintiff hasn't demonstrated a nexus between the retirement comments and his termination.  *Cone*, 14 F.3d at 531.  Plaintiff's argument that Wetschensky and Bradbury's retirement questions undermine defendant's explanation fails because his supervisors' comments were "isolated" and "unrelated to the challenged action"—unpaid 10-minute breaks.  *Bullard*, No. 09-4024-SAC, 2011 WL 4092192, at *19.  Plaintiff complains that defendant withheld paid breaks from him because of his age.  Yet, the CBA—not Wetschensky and Bradbury—controlled whether plaintiff has paid breaks.  Plaintiff's relationship to Wetschensky and Bradbury is incomparable to the situation in *Bruno*, where the supervisor making retirement comments also had authority over plaintiff's position and wage.  *Id.* at 963.  Unlike *Bruno*, plaintiff doesn't allege that defendant offered him early retirement, that it transferred him into a new position with increased oversight and decreased pay, or that defendant harassed plaintiff in any other way.  While plaintiff testified that Wetschensky asked when he planned to retire more than five times, plaintiff also testified that he retired voluntarily, that he never felt encouraged to retire, that his supervisors never suggested that it was time for him to retire, and no one suggested that his age was an issue in employment.  Doc. 43-1 at 31–38 (Pl.'s Dep. 31:18–38:16).  And as in *Cone* and *Bullard*, the supervisors making purportedly ageist comments are untethered from the alleged discriminatory action—

there, termination; here, compensation. *Bullard*, No. 09-4024-SAC, 2011 WL 4092192, at *19; *Cone*, 14 F.3d at 531–32.

Plaintiff's argument that Wetschensky and Bradbury's retirement questions demonstrate pretext also fails because employers lawfully may ask about employees' retirement plans and plaintiff adduced no other evidence capable of supporting a finding of discrimination. *Maughan*, 281 F. App'x at 807. Wetschensky and Bradbury's comments differ markedly from those in *Bullard*, where even a manager's *explicit* plea for plaintiff to retire wasn't enough to demonstrate pretext. 2011 WL 4092192, at *19. And plaintiff doesn't even claim that occurred here. He introduces evidence of mere questions about his retirement plans.

In sum, plaintiff's ADEA claim can't survive summary judgment even if he could establish a prima facie case because he's failed to identify a triable issue of pretext. Plaintiff hasn't shouldered his burden at summary judgment—one requiring him to adduce "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that would permit a reasonable factfinder to infer that defendant didn't pay plaintiff for 10-minute breaks because of his age. *Morgan*, 108 F.3d at 1323.

## V.      Conclusion

For reasons explained above, the court grants summary judgment against plaintiff's ADEA claim against defendant. This ruling concludes all the claims at issue in this case. The court thus directs the Clerk of the Court to enter Judgment for defendant and close the case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment (Doc. 39) is granted.

**IT IS SO ORDERED.**

23

Dated this 2nd day of November, 2023, at Kansas City, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge